IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| FATPIPE NETWORKS INDIA LIMITED, an India corporation,<br><br>               Plaintiff,<br><br>v.<br><br>XROADS NETWORKS, INC., a Delaware corporation,<br><br><br><br><br><br>               Defendant. | **ORDER GRANTING DEFENDANT XROADS' MOTION TO COMPEL RESPONSES TO XROADS' FIRST AND SECOND SET OF SPECIAL INTERROGATORIES AND FIRST SET OF REQUESTS FOR THE PRODUCTION OF DOCUMENTS AND THINGS; AND DENYING MOTION FOR SANCTIONS**<br><br>Case No. 2:09-cv-186<br><br>District Judge Tena Campbell<br><br>Magistrate Judge David Nuffer |

Defendant XRoads Networks, Inc.'s Motion to Compel[1] is before this Court. After carefully considering the filings, the motion to compel is GRANTED IN PART and DENIED IN PART, and the motion for sanctions is DENIED.

## BACKGROUND

The parties both sell technology to enable secure communications over the internet or wide-area networks (WANs). Plaintiff FatPipe Networks India Limited (FatPipe) owns patents pertaining to "router-clustering technology that provides highly redundant, reliable, and high-speed Internet/WAN access for mission critical business applications."[2] FatPipe has patented means of

---

[1] Defendant XRoads Networks, Inc.'s Motion to Compel: (1) Responses to XRoads First and Second Set of Special Interrogatories (2) Responses to XRoads First Set of Requests for the Production of Documents and Things; and Motion for Sanctions (Motion to Compel), docket no. 155, filed March 3, 2010.

[2] Complaint ¶ 8, docket no. 1, filed February 27, 2009.

transmission of data at least partially in parallel over networks having different security characteristics. One of the networks is described as an open public network and the other a secure private network. The method and two types of controllers described in the patent are designed to compensate for the lower security of the open public network without imposing unnecessary encryption overhead on packets being sent over the more secure private network.[3]

That is, Fat Pipe's technology can bind two networks of different security together to ensure secure transmission for sensitive information.

FatPipe alleges that Defendant XRoads Networks, Inc. (XRoads) infringes two of FatPipe's patents.[4] FatPipe points to XRoads' description of its Edge product: "By utilizing the [XRoads'] Edge appliances, [a user] was able to connect both the public and private networks together using a 3DES encryption over the public network."[5] XRoads counterclaimed alleging invalidity and non-infringement.[6] Throughout the case history XRoads asserted that its technology does not do the things which it believes are characteristic of FatPipe's patent claims.[7]

### Chronology of Disputed Discovery

| | |
|---|---|
| June 5, 2009 | XRoads served its First Set of Interrogatories on FatPipe. |
| July 22, 2009 | FatPipe responded to XRoads' First Set of Interrogatories.[8] |
| August 7, 2009 | XRoads sent a letter to FatPipe's counsel detailing alleged insufficiencies with FatPipe's responses.[9] The letter raises issues |

---

[3] Plaintiff's Opposition to Defendant's Application for Modification of Court's Patent Rules at 3 (citation omitted), docket no. 27, filed July 2, 2009.

[4] Complaint.

[5] XRoads Networks' case study, attached as Exhibit A to Plaintiff's Opposition to Defendant's Application for Modification of Court's Patent Rules.

[6] Defendant/Counterclaim Plaintiff XRoads Networks, Inc.'s Answer, Affirmative Defenses and Counterclaims at 6-8, docket no. 4, filed March 31, 2009.

[7] Defendant XRoads Networks, Inc.'s Combined Opposition . . . .at 2, docket no. 48, filed under seal September 16, 2009.

[8] Declaration of Kathrine J. Weir in Support of Defendant XRoads Networks, Inc.'s Motion to Compel Responses to First and Second Set of Interrogatories, Requests for Production of Documents, and Sanctions at 2 (Declaration of Kathrine Weir), docket no. 157, filed March 3, 2010.

[9] *Id.*

with seven interrogatory responses, and points out that no response was made to the request for production.[10]

| | |
|---|---|
| August 12, 2009 | Counsel meet and confer. |
| August 14, 2009 | XRoads served its Second Set of Interrogatories on FatPipe.[11] |
| September 15, 2009 | FatPipe produced documents in response to XRoads' First Set of Requests for the Production of Documents and Things. |
| September 18, 2009 | FatPipe supplemented its responses to the First Set of Interrogatories.[12] |
| September 18, 2009 | FatPipe responded to XRoads' Second Set of Interrogatories.[13] |
| September 18, 2009 | FatPipe produced documents in response to XRoads' First Set of Requests for the Production of Documents and Things.[14] |
| February 25, 2010 | XRoads sent a letter to FatPipe's counsel detailing alleged deficiencies in FatPipe's responses to the production of documents.[15] |
| March 2, 2010 | Meet and confer efforts failed.[16] |

---

[10] Exhibit C to Declaration of Kathrine Weir. FatPipe's counsel incorrectly states that "no requests for production are addressed" in this letter. (Plaintiff FatPipe's Memorandum in Opposition to Defendant XRoads' Memorandum in Support of Motion to Compel: (1) Responses to XRoads First and Second Set of Special Interrogatories; (2) Responses to XRoads First Set of Requests for the Production of Documents and Things (Opposing Memorandum) at 4, docket no. 177, filed April 1, 2010.)

[11] Declaration of Kathrine Weir at 2.

[12] *Id*.

[13] *Id.* 3.

[14] Letter dated February 25, 2010 from XRoads' counsel to FatPipe's counsel at 1, attached as Exhibit P to Declaration of Kathrine Weir.

[15] *Id*.

[16] Defendant XRoads Networks, Inc.'s Memorandum in Support of Motion to Compel (1) Responses to XRoads First and Second Set of Special Interrogatories (2) Responses to XRoads First Set of Requests for the Production of Documents and Things; and Motion for Sanctions (Supporting Memorandum) at 2, docket no. 156, filed March 3, 2010; Opposing Memorandum at 5.

## CURRENT MOTION

XRoads moves to compel additional responses to the following interrogatories and requests for production of documents and things propounded by XRoads on FatPipe.[17]

## Interrogatories

<u>No. 1</u>

Interrogatory No. 1 states:

> For each product developed, manufactured, offered for sale, or sold by FatPipe that you contend falls within the scope of any of the claims of the '143 and '506 patents, separately provide, for each such product, a claim chart identifying specifically where each element of each such claim is found within each such product.[18]

XRoads states that the claim chart provided by FatPipe "is meaningless as it does not include any specifics as to how any claim element is met by the FatPipe covered product."[19] FatPipe provided supplemental responses which XRoads claims are "even more incomplete than its original."[20] FatPipe states that "the provided response [is] sufficiently responsive."[21] The court will shortly issue a revised schedule in the case which will finally set a schedule for the parties' compliance with Judge Campbell's patent rules, which should substantially deliver the information sought by this interrogatory.

---

[17] Supporting Memorandum at 3.

[18] *Id.*.

[19] *Id.*

[20] *Id.* at 5.

[21] Opposing Memorandum at 6.

<u>No. 4</u>

Interrogatory No. 4 states:

Separately, for each XRoads product you contend infringes any claim of the '143 and '506 patents, separately state in detail all facts relating to your first knowledge of each such product.[22]

FatPipe supplemented its initial response to state that it first learned about XRoads' products through sales calls made by FatPipe's employees with "Greg Purcell at Wayport and . . .Bruce Duncan at Massachusetts Housing Financing Authority."[23] The supplemental response also indicated that FatPipe "learned more about the Edge products through web searches . . . and through various documents published by XRoads."[24] This response is insufficient, according to XRoads, because it "fails to provide such information as the date when FatPipe first learned of the accused product and the identity of persons at FatPipe who gained such knowledge."[25]

Regarding dates, XRoads concedes that, in a letter dated August 12, 2008, FatPipe stated that "[t]o the best recollection of FatPipe's management, FatPipe learned of XRoads' possible infringement in about October 2008."[26] This statement (which is not included in the interrogatory response) does not properly address when FatPipe first became aware of the products, but rather states when FatPipe formed the belief that the products might constitute an infringement.

Regarding the identity of persons at FatPipe, XRoads states that it "is entitled to know the names of those individuals [who first discovered the allegedly infringing products] and what they

---

[22] Supporting Memorandum at 7.

[23] *Id.*

[24] *Id.* at 7-8.

[25] *Id.* at 8.

[26] *Id.* (alteration in original).

know so that it can pursue further discovery."[27]  The information is also "relevant to XRoads'

defenses such as laches."[28]

FatPipe, however, does not believe the "date when FatPipe first learned of the accused

product and the identity of the person at FatPipe who gained such 'knowledge' . . . is called for

by the [interrogatory] request."[29]  This date and identity information is important and is called for

by the request.  It asks FatPipe to "state in detail all facts relating to your first knowledge of each

such product."[30]  FatPipe is required to submit a more complete response to include dates when

FatPipe first became aware of the products and the identities of specific individuals at FatPipe

who first discovered the products.

<u>No. 5</u>

Interrogatory No. 5 states:

Separately, for each XRoads product you contend infringes any claim of the '143
and '506 patents, separately state all facts that you were aware of regarding
whether each such product infringes any such claim prior to filing this action.[31]

FatPipe provided a response subject to objections[32] which made reference to "XRoads'

literature"; "numerous XRoads documents"; "white papers"; "promotional literature"; "user

manuals"; and an "Edge controller."[33]  XRoads states this is insufficient as it does not

specifically identify the documents.[34]  XRoads argues that FatPipe based its response on XRoads

literature and an Edge controller but did "not identify what literature it reviewed or what specific

---

[27] *Id.* at 9.

[28] *Id.*

[29] Opposing Memorandum at 6.

[30] Supporting Memorandum at 7.

[31] *Id.* at 9.

[32]*Id.*

[33] *Id.* at 9-11.

[34] *Id.* at 11.

portions of its code or XRoads code supports infringement."[35]  According to XRoads, this is information that FatPipe has but that it has not produce in support of its response.[36]  FatPipe states that it has identified and produced the limited documentation which it had access to prior to filing.[37]

The interrogatory response indicates that FatPipe tested XRoads' Edge controller prior to filing.[38]  XRoads contends FatPipe has not produced information regarding the tests, specifically "what testing was performed, what individuals performed these tests, when these test[s] were performed, or how these tests were documented."[39]

Both parties agree that FatPipe's response made reference to a screen shot from an XRoads' disclosure made post-filing,[40] which was thus beyond the scope of the interrogatory. FatPipe stated it will amend its response to delete this reference.[41]

FatPipe is required to fully answer XRoads' Interrogatory No. 5 by identifying with precision the documents FatPipe considered prior to filing the lawsuit; identifying with precision the Edge controller used in the testing which XRoads' referenced in its response; and providing information on the testing, which is to include what was tested, how the device was tested, who performed the testing, and any facts that XRoads obtained from the testing.

---

[35] *Id.*

[36] *Id.*

[37] Opposing Memorandum at 7.

[38] Supporting Memorandum at 10.

[39] *Id.* at 11-12.

[40] *Id.* at 11; Opposing Memorandum at 7.

[41] Opposing Memorandum at 7.

Interrogatory No. 11 states:

Identify the specific portion or portions of FatPipe's source code that perform[s] the function of modifying the SYN request as claimed in Claim 1 of the '143 patent.

Interrogatory No. 13 states:

To the extent not covered by Interrogatory No. 11, separately identify the specific portion or portions of FatPipe's source code that perform[s] the function claimed in each element of Claim 1 of the '143 patent.[42]

FatPipe's response indicated it had determined XRoads had not infringed the '143 patent and would dismiss all claims based on this patent.[43] FatPipe later changed its position and stated it will continue to pursue the claims based on the '143 patent.[44] Accordingly, FatPipe agreed to supplement its answer.[45] XRoads asserts that FatPipe should be compelled to answer or withdraw the claims on the '143 patent entirely.

XRoads contends it is entitled to evidentiary sanctions against FatPipe as its responses "are false and FatPipe has had every opportunity to supplement its discovery responses to match its change in position."[46] FatPipe argues that its first response was true when made.[47] As the response was true based on FatPipe's belief at the time, sanctions are not appropriate. FatPipe has agreed to supplement its response, and must do so.

---

[42] Supporting Memorandum at 12.

[43] *Id.* at 12-13.

[44] Opposing Memorandum at 7.

[45] *Id.*

[46] Supporting Memorandum at 13.

[47] Opposing Memorandum at 7.

Interrogatory No. 12 states:

Identify the specific portion or portions of FatPipe's source code that perform[s] the function of submitting the encrypted data packets of the first collection for transmission over a first path over the internet and submitting the data packets of the second collection for transmission over a second path through the private network and claimed in Claim 1 of the '506 patent.

Interrogatory No. 14 states:

To the extent not covered by Interrogatory No. 12, separately identify the specific portion or portions of FatPipe's source code that perform[s] the function claimed in each element of Claim 1 of the '506 patent.[48]

FatPipe elected to produce business records (as allowed by Fed. R. Civ. P. 33(d))[49] and provided the "complete code" to XRoads.[50] FatPipe described "FP 001443" – the entire FatPipe source code – as the location where the described functionality is found.[51] XRoads argues that without any specific direction, the response is insufficient to identify the responsive information[52] and that Rule 33(d) is "not properly invoked here as the documents provided are the entire source code."[53] XRoads further argues that the burden on it to "discern the function of every line of FatPipe's code . . . would be nearly impossible," whereas the specific portions of source code "are already known to FatPipe" and would not be unduly burdensome.[54]

Rule 33(d) allows a responding party to produce business records by "specifying the records that must be reviewed, *in sufficient detail* to enable the interrogating party to locate and

---

[48] Supporting Memorandum at 13-14.

[49] *Id.* at 14.

[50] Opposing Memorandum at 8.

[51] Supporting Memorandum at 14.

[52] *Id.*

[53] *Id.* at 14-15.

[54] *Id.* at 15.

identify them *as readily as the responding party could*."[55]  Providing the entire source code and expecting the requesting party to discern the function of each line of code is not a sufficient response.  XRoads asserts that in its own production of source code at FatPipe's request, XRoads "identified the specific source code sections that perform the relevant functions at issue in this case and separately produced that code."[56]  It is reasonable to expect that FatPipe do the same for its code.

FatPipe also asserts these interrogatories go to "whether FatPipe is practicing its patent, a concept related to lost profits."[57]  A motion to bifurcate damages[58] has been granted since the Opposing Memorandum was filed, and information related to damages is not now discoverable.  XRoads argues that the interrogatories are "essential to other invalidity issues such as the date of invention, inventorship, and compliance with the best mode requirement."[59]  These interrogatories pertain to liability and seek presently discoverable information.  FatPipe is required to respond to this interrogatory.

---

[55] Fed. R. Civ. P. 33(d)(1). (emphasis added)

[56] Supporting Memorandum at 15.

[57] Opposing Memorandum at 8.

[58] Defendant XRoads Networks Inc.'s Motion to Bifurcate Liability Discovery from Damages Discovery and a Stay of Damages Discovery, docket no. 166, filed March 5, 2010.  This motion was granted on April 8, 2010, in docket 182.

[59] Reply Brief in Support of Defendant XRoads Networks, Inc.'s Motion to Compel:  (1) Responses to XRoads' First and Second Set of Special Interrogatories; (2) Responses to XRoads' First Set of Requests for the Production of Documents and Things; and Motion for Sanctions (Reply) at 5, docket no. 185, filed April 19, 2010.

## Requests for Production of Documents and Things

Requests for Production Nos. 1 and 2

      Request for Production No. 1 seeks:

      All documents and things supporting, underlying, or forming a basis for your
response to each interrogatory in Defendant XRoads Networks, Inc.'s First Set of
Interrogatories to Plaintiff FatPipe Networks India Limited.

      Request for Production No. 2 seeks:

      All documents and things requested to be identified in Defendant XRoads
Networks, Inc.'s First Set of Interrogatories to Plaintiff FatPipe India Limited.[60]

      FatPipe's response indicated that it had "previously produced documents FP 000001-001439, most of which are responsive to this request."[61] XRoads asserts that FatPipe did not claim that all of the responsive documents were produced; only that "most" of the documents identified were responsive. It seeks to have FatPipe either "produce further documents or verify that no such [additional responsive] documents exist."[62] FatPipe clarified its answer by stating that the "answer is intended to mean that the referenced documents may be over inclusive, not under inclusive,"[63] and that it is "unaware of any other responsive documents that were not identified."[64]

      XRoads contends that FatPipe "failed to identify which documents refer to which interrogatory or even delineate which documents are produced according to which document request."[65] The rules of civil procedure require that "[a] party must produce documents as they are kept in the usual course of business or must organize and label them to correspond to the

---

[60] Supporting Memorandum at 15-16.

[61] *Id.*

[62] *Id.* at 16.

[63] Opposing Memorandum at 9.

[64] *Id.*

[65] Supporting Memorandum at 16.

categories in the request."[66]  FatPipe's response to these requests for production made reference

to over 1,400 previously produced documents, including its entire source code, and there is no

indication that these documents were produced as maintained in the ordinary course of business.

FatPipe is required to identify which of the documents are responsive to each interrogatory.

<u>Requests for Production Nos. 3, 5, and 6</u>

> Request for Production No. 3 seeks:
>
> All documents and things referring to, relating to, indicating or identifying any
> Person to whom a disclosure sufficient to enable one skilled in the art to make or
> practice the subject matter of the claim was made contemporaneously with the
> earliest date of the conception of the subject matter of each claim of the '143 and
> '506 patents you contend are infringed by any XRoads product.[67]
>
> Request for Production No. 5 seeks:
>
> All documents and things constituting, referring to, or relating to the first written
> description of the alleged invention disclosed and claimed in any claim of the
> '143 and '506 patents you contend are infringed by any XRoads product.
>
> Request for Production No. 6 seeks:
>
> All documents and things constituting, referring to, or relating to the first
> disclosure or demonstration to any Person of any and all inventions, methods,
> products, or devices described or shown in the '143 and '506 patents.[68]

FatPipe objected to these requests as being vague and ambiguous, although it did not

indicate how the requests were vague and ambiguous.  It responded that "to the extent

understood, FatPipe has produced the patent applications, which are the first such disclosures of

which it is aware."[69]  XRoads contends that the "production of the patent application is

insufficient as the patent application itself is clearly not the first disclosure of the patentable

---

[66] Fed. R. Civ. P. 34(b)(2)(E)(i).

[67] Supporting Memorandum at 16-17.

[68] *Id.* at 17.

[69] *Id.* at 16-17.

material."[70] XRoads does not state why this is "clearly" the case except to state that "[d]ocuments, notes and communications about the patent's ***conception and development*** necessarily predate the patent application," and "are relevant and should be produced immediately."[71] It contends that it is "entitled to the earliest disclosure as it is relevant to potential prior art offers for sale or public knowledge in addition to the date of invention."[72]

FatPipe indicated it "believ[ed] that the request sought documents relating to disclosures of documents relating to date of conception of the claims of the . . . patents," and that its answer regarding *disclosures* is "fully responsive."[73] FatPipe's reading is consistent with the requests and no further response will be required.

Request for Production No. 4

Request for Production No. 4 seeks:

All documents and things referring to or relating to the testing of the subject matter of each claim you contend is infringed by any XRoads product.[74]

As indicated in its response to Interrogatory No. 5, FatPipe tested an Edge controller prior to filing this lawsuit.[75] XRoads states that "FatPipe has refused to produce the Edge devices which it has tested."[76] XRoads' access to these devices is dealt with separately in a Motion to Compel[77] and the Minute Order Granting Motion to Compel.[78]

---

[70] *Id.* at 17.

[71] *Id.* (emphasis added).

[72] Reply at 6.

[73] Opposing Memorandum at 9.

[74] Supporting Memorandum at 18.

[75] *Id.* at 10.

[76] *Id.* at 18.

[77] Defendant XRoads Networks, Inc.'s Ex Parte Application for Order Compelling Inspection of Edge Devices in FatPipe's Possession, docket no. 121, filed January 20, 2010.

[78] Minute Order Granting 121 Motion to Compel, docket no. 182, filed April 8, 2010.

XRoads also states that FatPipe "has not produced any documents relating to [the Edge device] testing, or identif[ied] what individuals performed these tests or when those test[s] were performed."[79] FatPipe contends that XRoads is not entitled to discovery "[t]o the extent that XRoads seeks notes and other documents in the possession of Josh Haar, or Mr. Hollaar [as] the dates for naming experts, exchanging expert reports, and taking expert depositions has been vacated.[80] But XRoads is not seeking discovery from expert witnesses, it is seeking discovery on tests FatPipe performed prior to filing this lawsuit. XRoads is entitled to discovery concerning FatPipe's testing of the XRoads device conducted prior to the filing of this lawsuit and FatPipe is required to produce all documents concerning its testing.

Requests for Production Nos. 7-12, 24-25, 31-34

Request for Production No. 7 seeks:

Documents sufficient to evidence the monthly sales of each product identified in response to XRoads' Interrogatory No. 1 served concurrently herewith.

Request for Production No. 8 seeks:

Documents sufficient to evidence the monthly sales of each device, part or component sold by FatPipe for use with any product identified in response to XRoads' Interrogatory No. 1, served concurrently herewith.

Request for Production No. 9 seeks:

All documents which evidence the costs incurred by you in the development and sale of any product identified in response to XRoads' Interrogatory No. 1, including research and development, costs of manufacture, costs of promotion, and costs of distribution and sale.

Request for Production No. 10 seeks:

All documents which evidence the costs incurred by you in the development and sale of each device, part or component sold by FatPipe for use with any product identified in response to XRoads' Interrogatory No. 1, including costs of research

---

[79] Supporting Memorandum at 18.

[80] Opposing Memorandum at 10.

and development, costs of manufacture, costs of promotion, and costs of distribution and sale.

Request for Production No. 11 seeks:

Documents sufficient to establish the gross and net profits of any product identified in response to XRoads' Interrogatory No. 1, from its first sale to the present.

Request for Production No. 12 seeks:

Documents sufficient to establish the gross and net profits of each device, part or component sold by FatPipe for use with any product identified in response to XRoads' Interrogatory No. 1, from its first sale to the present.[81]

Request for Production No. 24 seeks:

A copy of FatPipe's year-end general ledger for each year from 1999 to the present.

Request for Production No. 25 seeks:

All documents and things that you reviewed prior to filing this case that support any contention you have that any of XRoads' products infringe any of the claims of the '143 and '506 patents.[82]

Request for Production No. 31 seeks:

All documents evidencing each offer for sale of any device identified in response to XRoads' Interrogatory No. 1 from the date of the first of any such offer to the present, including all marketing and sales and promotion materials.

Request for Production No. 32 seeks:

All correspondence exchanged between FatPipe and any potential customer for any device identified in response to XRoads' Interrogatory No. 1.

Request for Production No. 33 seeks:

Produce for inspection all products identified in response to XRoads' Interrogatory No. 1 and any prototypes of any such products.

---

[81] Supporting Memorandum at 19-20.

[82] *Id.* at 25.

Request for Production No. 34 seeks:

All documents relating to, concerning, or evidencing any communications between FatPipe and any third party concerning XRoads or XRoads' products or the '143 and '506 patents.[83]

These requests appear to seek discovery related to damages. XRoads filed a Motion to Bifurcate and Stay Damages Discovery[84] days after filing the instant motion. The Motion to Bifurcate and Motion to Stay were both granted.[85] Accordingly, all damages discovery is deferred.

However, XRoads contends that some of these requests involve more than just damages. Specifically, XRoads argues the scope of Requests No. 7, 8, and 9 includes documents relating to FatPipe's first offer for sale, which "should be produced as such documents relate to invalidity."[86] XRoads further argues the scope of Request Nos. 9, 10, and 31 includes "documents evidencing the cost of development [which] should be produced as such documents relate to the date of invention."[87] FatPipe is required to produce documentation in the categories described in Request Nos. 7, 8, 9, 10, and 31 which evidence the first sale and the first incurred costs of development.

<u>Requests for Production Nos. 15, 29 and 30</u>

Request for Production No. 15 seeks:

All documents containing any communication between you and any third party regarding the subject matter disclosed in the '143 and '506 patents.

---

[83] *Id.* at 20-21.

[84] Defendant XRoads Networks, Inc.'s Motion to Bifurcate Liability Discovery from Damages Discovery and a Stay of Damages Discovery, docket no. 166, filed March 5, 2010.

[85] Minute Order Granting 166 Motion to Bifurcate; granting 166 Motion to Stay, docket no. 182, filed April 8, 2010.

[86] Reply at 7.

[87] *Id.*

Request for Production No. 29 seeks:

All documents that evidence any disclosure and/or publication to any third party of any devices and/or method disclosed and/or claimed in the '143 and '506 patents, or any continuation, continuation-in-part, or divisional or foreign patent or patent application thereof.

Request for Production No. 30 seeks:

All documents evidencing the first public use, offer for sale, and/or sale of each device and/or method disclosed and/or claimed in the '143 and '506 patents.[88]

XRoads states that FatPipe only responded to the '506 patent and not the '143 patent.[89] FatPipe agreed in its opposition to the motion to supplement its responses to encompass the '143 patent.[90] FatPipe is ordered to supplement its responses as to the '143 patent.

Request for Production No. 17

Request for Production No. 17 seeks:

A copy of each reference cited by any Patent Office, including foreign patent offices, in any proceeding relating to any patent or patent application, including foreign patents and patent applications, related to the '143 and '506 patents.[91]

FatPipe responded that "FatPipe has produced documents constituting communications with the PTO, which include all such references within FatPipe's possession, custody or control."[92] XRoads argues FatPipe qualified its response by only producing communications with the PTO and which are within FatPipe's possession, custody and control.[93] FatPipe states that its "response is fully responsive as it is not obligated to produce documents not in its possession," and it "did not intend the response to suggest that it has failed to produce copies of

---

[88] Supporting Memorandum at 21-22.

[89] *Id.* at 22.

[90] Opposing Memorandum at 11.

[91] Supporting Memorandum at 22.

[92] *Id.*

[93] *Id.*

the requested references because they did not constitute communications with the PTO."[94]  In

other words, FatPipe is stating that the only references which it is aware of are revealed in the

produced communications with the USPTO.  Apparently, FatPipe is saying it has no knowledge

of references cited by other patent offices.

FatPipe should certify in its response that it does not know of any other references.

<u>Request for Production No. 18</u>

Request for Production No. 18 seeks:

All documents which discuss FatPipe's marketing plans for any device identified
in response to XRoads' Interrogatory No. 1.[95]

FatPipe's response objected to the term "marketing plans" as vague and ambiguous.

XRoads argues that because FatPipe produced documents it referred to as "marketing materials,"

it understands what "marketing" is.[96]  However, the term "plans" remains undefined.  FatPipe

also stated in its response that "to the extent understood, FatPipe is aware of no such

documents."[97]  XRoads objects to FatPipe's qualifying its response with the phrase "to the extent

understood."[98]  FatPipe's qualification reflects XRoads' use of the term "plans" without

definition.

FatPipe further argues that marketing plans are relevant to damages and are therefore not

now discoverable.[99]  XRoads does not dispute that they are relevant to damages, but argues that

"early or historic materials may evidence prior art offers for sale or sales and are therefore

---

[94] Opposing Memorandum at 11.

[95] Supporting Memorandum at 23.

[96] *Id.*

[97] *Id.*

[98] *Id.*

[99] Opposing Memorandum at 12.

relevant to invalidity."[100]  FatPipe is required to produce documents responsive to this request

that were created prior to the date of the patent applications.

<u>Request for Production No. 19</u>

Request for Production No. 19 seeks:

> All documents and things which relate to the design and development of each
> product identified in response to XRoads' Interrogatory No. 1, including but not
> limited to design drawings, schematics, diagrams, specifications, and
> prototypes.[101]

FatPipe's response indicated it had no such documents.[102]  XRoads argues that this

request includes version control documents which FatPipe did not provide.[103]  FatPipe argues

that while it has version control documents they are not within the request. [104]  "However,

[versioning information] is not the same as 'design drawings, schematics, diagrams,

specifications, and prototypes' relating to the design of and development of each product."[105]

Version control documents are, however, "documents and things which relate to the design and

development of each [FatPipe product]."  FatPipe is ordered to produce all version control

documents.  Contrary to FatPipe's argument, versioning information is relevant to issues other

than damages.

<u>Requests for Production Nos. 20 and 22</u>

Request for Production No. 20 seeks:

> An exemplar of each version of any software used in the operation of any device
> identified in response to XRoads' Interrogatory No. 1.

---

[100] Reply at 7.

[101] Supporting Memorandum at 23.

[102] *Id.*

[103] *Id.*; Reply at 8.

[104] Opposing Memorandum at 12.

[105] *Id.*

Request for Production No. 22 seeks:

A copy of the source code for any software used in the operation of any device identified in response to XRoads' Interrogatory No. 1.[106]

FatPipe indicates it has provided its earliest version of its source code, but not later versions because "[s]ubsequent versions are relevant only to the issue of damages."[107] Further, FatPipe's counsel understood that XRoads' counsel "did not wish to receive all versions of the code."[108] XRoads argues that it did not limit the scope of the request; and subsequent versions are relevant to more than just damages as they are also "relevant to inventorship; date of invention; enablement and best mode depending on their timing."[109] FatPipe is ordered to produce the subsequent versions of the source code.

Requests for Production Nos. 21 and 23

Request for Production No. 21 seeks:

Any documents containing a protocol or summary of operation of any device identified in response to XRoads' Interrogatory No. 1, and any software used in the operation of any such device.

Request for Production No. 23 seeks:

A copy of all manuals for any device identified in response to XRoads' Interrogatory No. 1, including users' manuals and technical manuals.[110]

FatPipe's response indicates that it produced manuals describing the operation of its products.[111] XRoads argues that this answer is qualified because "XRoads requested 'any documents' and not just 'manuals,'" and it also requested *all* of the manuals, not just some of the

---

[106] Supporting Memorandum at 24.

[107] Opposing Memorandum at 12.

[108] *Id.*

[109] Reply at 8.

[110] Supporting Memorandum at 24.

[111] *Id.*

manuals.[112]  FatPipe asserts that XRoads has not explained how the expansive documentation request relates to the liability phase of the lawsuit.[113]  XRoads argues that "historic documents such as manuals etc. are relevant to inventorship; date of invention; enablement and best mode."[114]  FatPipe must produce documents responsive to the requests.

<u>Request for Production No. 26</u>

Request for Production No. 26 seeks:

All documents that discuss the infringement of any of the claims of the '143 and '506 patents by any XRoads product.[115]

FatPipe objected to the phrase "discuss the infringement" as vague and ambiguous, and indicated that to the extent understood it had no documents responsive to the request.[116]  But FatPipe also asserts that it has retained documents that are "properly subject to the attorney client privilege and work product doctrine."[117]

XRoads argues that FatPipe's objection is evasive and the answer is unfairly qualified.[118] XRoads argues that "[a]ny documents generated prior to the filing of the lawsuit should be produced or identified on a privilege log," and any documents generated later should be preserved.[119]

FatPipe is ordered to produce all responsive documents generated prior to the filing of the lawsuit or properly identify them on a privilege log.

---

[112] *Id.* at 24-25.

[113] Opposing Memorandum at 12.

[114] Reply at 8.

[115] Supporting Memorandum at 26.

[116] *Id.*

[117] Opposing Memorandum at 13.

[118]  Supporting Memorandum at 26.

[119] Reply at 8-9.

<u>Request for Production No. 28</u>

Request for Production No. 28 seeks:

All notes, drawings, e-mails, computer stored illustrations or notes, reports, notebooks and other documents or things created by any of the named inventors of the '143 and '506 patents relating to any of the inventions claimed in the '143 and '506 patents.[120]

FatPipe responded by referencing its response to Request No. 19, which indicated FatPipe had no such documents. XRoads' argues this response is confusing because Request No. 19 requested documents including "design drawings, schematics, diagrams, specifications, or prototypes," which is a different list than that enumerated in Request No. 28.[121] FatPipe concurs that its response is confusing and states it "will supplement the response to this request."[122]

FatPipe is required to supplement its response.

<u>Requests for Production Nos. 36 and 37</u>

Request for Production No. 36 seeks:

All documents that relate to, or report on, any testing of any XRoads product you contend infringes any claims of the '143 and '506 patents prior to the filing of this lawsuit.

Request for Production No. 37 seeks:

All documents that relate to the accusation by you of any XRoads product you contend infringes any claims of the '143 and '506 patents prior to the filing of this lawsuit.[123]

FatPipe's response refers to certain documents it produced, and indicates it will supplement when appropriate; a response XRoads contends is insufficient.[124] FatPipe argues that

---

[120] Supporting Memorandum at 26.

[121] *Id.*

[122] Opposing Memorandum at 13.

[123] Supporting Memorandum at 27.

[124] *Id.*

XRoads is improperly seeking "information that is properly part of its Preliminary Contentions" and work product from testifying experts.[125]  XRoads asserts the Request does not ask for work product from testifying experts and it is "seeking pre-filing testing."[126]

The Court agrees with FatPipe that the requests seek information that is properly part of its Preliminary Contentions.  However, XRoads is entitled to any documents related to pre-filing testing done by FatPipe[127] and FatPipe is required to produce them.

## Sanctions

XRoads argues that sanctions in the form of its attorney's fees and costs are appropriate.[128]  FatPipe's position is substantially justified, so that sanctions are not appropriate.

## ORDER

IT IS HEREBY ORDERED that XRoads' motion[129] to compel interrogatory responses and production of documents is GRANTED IN PART and DENIED IN PART as provided herein.  Additional responses ordered are due 28 days from the date of this order.  The motion for sanctions is DENIED.

Dated August 3, 2010.

BY THE COURT:

David Nuffer
U.S. Magistrate Judge

---

[125] Opposing Memorandum at 13.

[126] Reply at 9.

[127] _See_ discussion above at  pp. 7, 13-14.

[128] Supporting Memorandum at 27-28.

[129] Defendant XRoads Networks, Inc.'s Motion to Compel:  (1) Responses to XRoads First and Second Set of Special Interrogatories (2) Responses to XRoads First Set of Requests for the Production of Documents and Things; and Motion for Sanctions, docket no. 155, filed March 3, 2010.