# UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| FATPIPE NETWORKS INDIA LIMITED, n/k/a FATPIPE NETWORKS, LTD., an India corporation,<br><br>     Plaintiff,<br><br>vs.<br><br>XROADS NETWORKS, INC., a Delaware corporation,<br><br>     Defendant. | **MEMORANDUM DECISION AND ORDER GRANTING IN PART DEFENDANT'S MOTION FOR SANCTIONS AND DISMISSAL FOR EVIDENCE TAMPERING AND SPOLIATION AND FINDING MOOT PLAINTIFFS MOTION TO STRIKE**<br><br>Case No. 2:09-CV-186 TC DN<br><br>Magistrate Judge David Nuffer |

Defendant XRoads Networks, Inc. ("XRoads") filed a Motion for Sanctions and Dismissal for Evidence Tampering and Spoliation[1] on 8 April 2011 (the "Motion for Sanctions") based upon FatPipe Networks, Ltd.'s ("FatPipe") alleged tampering with logs of certain XRoads Edge devices in FatPipe's sole possession. FatPipe's testing of these devices was alleged to provide evidence of infringement. In addition, XRoads seeks sanctions against FatPipe arising from Ms. Sanchaita Datta's alleged perjury in connection with the alleged testing of the XRoads devices.

This matter is referred to the magistrate judge for decision pursuant to 28 U.S.C. § 636(b)(1)(B) by Judge Tena Campbell.[2] The parties fully briefed the Motion for Sanctions and

---

[1] Motion for Sanctions and Dismissal for Evidence Tampering and Spoliation, docket no. *301*, filed April 8, 2011.

[2] Docket no. 331, filed May 16, 2011.

submitted documents pursuant to declarations.[3]  In addition, FatPipe moved to Strike the

Declaration of Daren French.[4]

The magistrate judge conducted an evidentiary hearing regarding XRoads' Motion for

Sanctions on 14 and 15 November 2011.[5]  The magistrate judge considered the prior submissions

of the parties and the exhibits from both the Plaintiff and the Defendant admitted into evidence at

the hearing .[6]

A draft of this order was submitted by XRoads[7] as the magistrate judge directed.[8]

Fatpipe objected to the form of the draft order,[9] and those objections have been considered.

## BACKGROUND

1.      XRoads manufactures XRoads Edge devices that increase internet speed and

accessibility to its customers.  The devices are referred to as "EdgeXOS" devices and will be

referred to herein as the XRoads Edge device(s).

2.      On or about 27 February 2009, FatPipe filed a Complaint alleging infringement

by XRoads of FatPipe's Patent Nos. 7,269,143 and 7,444,506 (hereinafter referred to as the '143

Patent and '506 Patent, respectively).[10]

---

[3] Docket nos. 303, 321, 322, 329, 330, 355, 363.

[4] Docket no. 341, filed May 27, 2011.

[5] Docket nos. 411 and 412, filed November 14 and 15, 2011 .

[6] Exhibit List, docket no. 413, filed November 15, 2011.

[7] Docket no. 430, filed December 20, 2011.

[8] Docket no. 412, filed November 15, 2011.

[9] Docket no. 428, filed December 19, 2011.

[10]  Docket no. 1.

3.      When asked in interrogatories and discovery about evidence of infringement, FatPipe has consistently referred to the XRoads Edge as the accused devices.[11]

**Inspection of Devices**

4.      FatPipe currently has two XRoads Edge devices in its possession.  The first XRoads device was procured by FatPipe prior to the time this action was filed.  The second XRoads device was procured by FatPipe on or about 28 July 2009 - after this action was filed.[12]

5.      FatPipe refused inspection of the XRoads Edge devices despite several separate requests.[13]  XRoads filed a motion to compel inspection of the XRoads Edge devices in FatPipe's possession which the magistrate judge granted.[14]  The magistrate judge later appointed an independent examiner to inspect the XRoads Edge devices.

6.      The parties stipulated to Dr. Brent Nelson as the independent expert to inspect the XRoads Edge devices in FatPipe's possession.[15]

7.      A written protocol was developed and agreed to by the parties to govern Dr. Nelson's inspection of the XRoads Edge Devices.[16]

---

[11]  See FatPipe's Second Supplemental Responses to XRoads' First and Second Set of Interrogatories admitted as Exhibit A at the hearing and attached as Exhibit A to XRoads' Memorandum in Support of the Motion for Sanctions (Supporting Memorandum), docket no. 303, filed under seal April 8, 2011.  Exhibits to the Supporting Memorandum were admitted with the same reference letters at the hearing on this motion.

[12]  Sanchaita Datta Deposition, p. 143, lines 5-20 attached to Supporting Memorandum.  Invoice for the second device admitted as Exhibit B at the hearing and attached as Exhibit "B" to the Supporting Memorandum.

[13]  Docket no. 121, p. 3, filed January 20, 2010.

[14]  Docket no. 182, filed April 8, 2010.

[15]  Order dated 3 August 2010 (docket no. 231) and Notice of Agreement re:  Expert (docket no. 236).

[16]  Docket no. 242, filed September 21, 2010.

8.      Dr. Nelson conducted two examinations of the XRoads Edge devices.  His first examination was conducted on or about 8 October 2010.[17]  At that examination, Dr. Nelson took screen shots of only one of the XRoads devices because FatPipe failed to provide the correct cable to connect the second XRoads device.  Dr. Nelson did not have access to the necessary cables to provide electric power to the second XRoads device in FatPipe's possession on 8 October 2010.[18]

9.      The second inspection took place on or about 8 November 2010.  In the second inspection, Dr. Nelson was able to take screen shots from the second XRoads device, but was unable to access the flash card in the second XRoads device because the nuts holding the panel on the XRoads device could not be removed.[19]

10.     The complete reports prepared by Dr. Nelson were received as Exhibits C and D at the hearing.

11.     When examining each of the XRoads Edge Devices, Dr. Nelson found that the devices displayed messages indicating the licensing of the devices had been violated.[20]

12.     Screen shots of the devices taken by Dr. Nelson show that the licensing statement reported:  "This system is in violation of its licensing agreement."[21]

---

[17]  Exhibit C.

[18] Exhibit C ¶ 10.

[19]  Exhibit D ¶ 16.

[20]  Dr. Nelson's reports Exhibits C and D attached these screen shots.  Color screen shots were provided with a CD filed with the Supporting Memorandum.  Docket no. 304, filed under seal April 8, 2011.

[21] Licensing corruption screen shots from the two XRoads Edge devices are marked as Exhibit E.

13.     XRoads "System Licensing" guide states that it is not possible for the XRoads Edge devices to function properly when the licensing has been corrupted as shown on the screen shots provided by Dr. Nelson.[22]

**Testing by Ms. Datta**

14.     Prior to the examination of the XRoads Edge devices, FatPipe provided its Second Supplemental Responses to XRoads' First and Second Set of Interrogatories which were verified by Sanchaita Datta.  In these supplemental responses, Ms. Datta outlined the testing which she claims to have conducted to determine whether there was infringement.  She stated that "[n]o testing documentation was created."[23]

15.     In FatPipe's Second Supplemental Responses to XRoads' First and Second Set of Interrogatories, FatPipe States:

> Prior to filing the lawsuit, FatPipe did some testing.  FatPipe obtained an Edge2Wan, 0014B7002E05, in late November 2008 which was tested by Sanchaita Datta over a several day period in December 2008.  In conjunction with that testing she reviewed the '143 and '506 patents.  She also reviewed documentation from the website which included "Frequently Asked Questions," marketing materials, product specifications, "How to Guides," white papers, and case studies.

> She configured the device by connecting the device to a lab computer workstation.  Using the graphical user interface, she configured WAN 1 and WAN 2 for two different routers.  Each router had different IP and physical addresses.  She pinged from both the XRoads device and the work station to ensure connectivity between the routers, the Edge device, and the work station.  She browsed the internet to ensure connectivity.  By utilizing "What is My IP Address," www.WhatIsMyIP.com, she confirmed the addresses had changed.  She concluded that router identification, router selection and SYN modification was in use.

---

[22] Exhibit  F.  (Reference:  Notes System Licensing PDF, posted on XRoads website, September 13, 2009; http://xnet.xroadsnetworks.com/documents/Notes_SystemLicensing.pdf).

[23] FatPipe's Second Supplemental Responses to XRoads First and Second Set of Interrogatories, Response to Interrogatory No. 5, pp.3-4.

She reviewed the user interface and documentation to determine the various product configurations.  She determined that the Edge device could be configured to connect to different networks in parallel, including networks which have different security characteristics.  The Edge device was able to receive data packets from the lab computer.  By reviewing the user interface, and consistent with the documentation, Ms. Datta determined that tunnels could be created over two WAN interfaces, and that different security measures could be selected for each tunnel:  "none," "Blowfish," and "3DES."  She also transmitted data packets over parallel connections to the internet and a private network.

No testing documentation was created.

There were also communications with counsel to which FatPipe asserts the attorney client and work product privileges.  A privilege log will be provided.

Prior to filing the lawsuit, FatPipe reviewed the XRoads website and made copies of those documents previously produced as FP 000001-70.

FatPipe's prior response is amended to delete the reference to the screen shot.[24]

16.     XRoads later deposed Ms. Datta.  She specifically stated that the devices had not been altered in any way.[25]

17.     FatPipe's interrogatory response states that Ms. Datta determined that "tunnels could be created over two WAN interfaces."[26]

---

[24] *Id.*

[25]

| Q. | Did you do any changes on purpose other than those that would happen automatically based upon the software programmed in the machine for its use? |
|----|----|
| A. | No. |

. . . .

| Q. | Fair enough.  Did you take the flash card out of the devices? |
|----|----|
| A. | Yes, I did. |
| Q. | What did you do with it? |
| A. | Copied the code off that onto a computer. |
| Q. | Did you do it for both of the devices that you had? |
| A. | Yes. |

. . . .

| Q. | Did you do any modification of the data on the compact flash card? |
|----|----|
| A. | No, I did not. |

Datta Deposition page 84, line 17, to page 85, line 24.

[26] FatPipe's Second Supplemental Responses to XRoads First and Second Set of Interrogatories, Response to Interrogatory No. 5, pp. 3-4.

**Normal Functioning of Devices and Logs**

18.     Within the XRoads Edge Devices there are two key logs:  the ALERT and the SYSTEM logs.  Both of these logs are updated by the device during normal use.[27]

19.     The ALERT log is used only to provide critical messages to the user.  In contrast, the SYSTEM log, as seen in the log files provided by Dr. Nelson, contains all of the device messages.[28]

20.     Critical log messages are placed in **both** the ALERT and SYSTEM logs at the same time.  Thus, if a critical log message is displayed in one log, it should also be seen in the other log.[29]

21.     However, the reports provided by Dr. Nelson show that the log messages from the devices do not appear in both the ALERT and SYSTEM logs.

22.     For example, an ALERT log screen shot taken from one examined device (0014B7005B12)  shows only a single line in the ALERT log:  "illegal system licensing."[30]

23.     But the corresponding SYSTEM log from that device shows at least ten entries in October and November 2010.[31]

24.     Similarly the ALERT log from the other device  (0014B7002E05)  shows a line with "email alert executive report" from 19 October 2009.[32]

25.     But the corresponding SYSTEM log from that device does not have a matching

---

[27] Transcript of Proceedings November 14, 2011, pages 50-52, docket no. 415, filed under seal, November 29, 2011.

[28] Transcript of Proceedings November 14, 2011, page 17.

[29] *Id.* at 18.

[30] Exhibit E.  Exhibit E p.1 is also included in the full 8 October 2010 report which is Exhibit C.

[31] Exhibit H.

[32] Exhibit I .

entry.[33]

26.    Comparison of the ALERT and SYSTEM log information from the two devices examined by Dr. Nelson shows that log messages which should be present are absent.

27.    A critical message that will appear in both the ALERT log and SYSTEM log is the "Email Alert Executive Support Report" log message.  The exact same message should appear in both logs at the same time.

28.    There is an "Email Alert Executive Support Report" log message in the ALERT log of the 0014B7005B12 device, and the SYSTEM log of the 0014B7002E05 device, but they appear at different times.

29.    In addition, both XRoads Edge device logs show two device serial numbers recorded.  For example, the SYSTEM log for each device shows the serial number for BOTH the 0014B7002E05 and 0014B7005B12.  In normal operation it is not possible for a single SYSTEM log to show serial numbers of more than one device.[34]

30.    A normal log message from the start-up procedure of the Edge device is seen in the last entries of the system logs from the 0014B7005B12 device, with the 0014B7002E05 identifier.[35]

31.    But the last entries of the logs from the 0014B7002E05 device with the 0014B7005B12 identifier has no start-up log messages.[36]

32.    Expected log information from normal operation of the devices is not present.

33.    The SYSTEM and ALERT logs do not reflect the testing that Ms. Datta claims to

---

[33] Exhibit J.

[34]  Exhibit K.

[35] Exhibit L. The log shows an erroneous serial number as explained later.

[36] Exhibit M.

have done regarding the XRoads devices.  Fat Pipe did not provide any logs showing the testing that Ms. Datta claimed under oath to have performed

34.     FatPipe did not present any evidence the data from the log files was copied from the XRoads device flash cards either before or after tests.

35.     FatPipe did not present any evidence of attempts to replicate the alleged testing of XRoads devices by Ms. Datta or to explain the status of the device log files.

36.     Ms. Datta testified that she did not reset the XRoads devices in her testing.[37]

37.     The log files are the fundamental record of the operation of the devices.

38.      FatPipe knew or should have known of the importance of the logs for testing and maintaining a record of the operation of the devices.

39.     FatPipe knew or should have known that the evidence contained in the logs is fundamental and that they should be preserved and protected to show any tests performed by FatPipe.

40.     FatPipe knew or should have known that XRoads would seek the log information related to FatPipe's alleged testing of the XRoads devices in its possession even before the protocol was developed for the inspection of the devices by Dr. Nelson.

41.     Ms. Datta testified that it is quite possible that she swapped the flash cards between the two devices.[38]  It should be apparent to someone competent in working with electronic devices that swapping the flash cards was not normal operation.  Ms. Datta testified that she left the flash cards outside the devices for an extended period of time.[39]  She did not testify as to marking the flashcards in any way to associate them with the appropriate device.

---

[37] Transcript of Proceedings November 15, 2011, page 336, docket no. 416, filed under seal, November 29, 2011.

[38] Transcript of Proceedings November 14, 2011, page 215.

[39] Transcript of Proceedings November 15, 2011, pages 339-40.

42.    Ms. Datta testified that the logs could have become corrupted due to the fact that she may have placed the wrong flash cards in the XRoads devices after she took them out of the devices to copy their contents.  There is no evidence that verifies data corruption might result from swapping the cards.  Ms. Datta could have performed such testing since the devices were in FatPipe's possession.  There was no evidence that card swapping results in any consequence other than recording multiple serial numbers on the card.  Yet, the cards in the XRoads devices in FatPipe's possession evidence many anomalies beyond multiple serial numbers.

43.    Ms. Datta testified that information from the logs could be deleted or altered by resetting the devices to "default."  However, she testified she did not reset the devices.[40]

44.    Ms. Datta testified there is a general lack of error checking throughout the XRoads source code including an absence of  false-outcome or "die" statements that might make it possible for log files to be altered or deleted.  She also testified, however, that she did not examine the entire code and could not verify that the operation of the source code could actually damage the logs.

45.    Ms. Datta speculated that XRoads could have accessed the XRoads Edge devices in FatPipe's possession and altered the logs or that the auto-update function programmed in the devices could make changes that are beyond user control.[41]  She presented no evidence that this had occurred, and XRoads presented testimony that it cannot occur.[42]

46.    FatPipe has not provided credible evidence of any event which would have altered or deleted log files to explain the status of the log files in the XRoads devices in

---

[40] Transcript of Proceedings November 15, 2011, page 336.  *See also* FatPipe Networks' Memorandum in Opposition to XRoads' Motion for Sanctions and Dismissal for Evidence Tampering at 20-21, docket no. 321, filed under seal April 25, 2011.

[41]  Transcript of Proceedings November 14, 2011, pages 259-260.

[42]  Transcript of Proceedings November 15, 2011, pages 359-360.

FatPipe's possession.

### Standards for Sanctions

Spoliation of evidence is defined as "the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation."[43] "A spoliation sanction is proper where (1) a party has a duty to preserve evidence because it knew, or should have known, that litigation was imminent, and (2) the adverse party was prejudiced by the destruction of the evidence."[44] When a party seeks sanctions for spoliation, the "movant has the burden of proving, by a preponderance of the evidence, that the opposing party failed to preserve evidence or destroyed it."[45]

A party's obligation not to destroy electronic information is clearly defined: "To ensure that the expansive discovery permitted by Rule 26(b)(1) does not become a futile exercise, putative litigants have a duty to preserve documents that may be relevant to pending or imminent litigation."[46]

The XRoads SYSTEM and ALERT logs automatically log critical file information. However, these logs in the XRoads devices in FatPipe's possesson do not reflect the testing that Ms. Datta claims to have performed. This testing was the basis for her statements that would support FatPipe's claims. The log screen shots provided by Dr. Nelson show that the expected logs are absent from the SYSTEM and ALERT logs of both devices and also show that the logs

---

[43] *Cache La Poudre Feeds, LLC v. Land O'Lakes, Inc.*, 244 F.R.D. 614, 620 (D. Colo. 2007) (citations omitted).

[44] *Burlington Northern & Santa Fe Ry. Co. v. Grant*, 505 F.3d 1013, 1032 (10th Cir. 2007) (citing *103 Investors I, L.P. v. Square D Co.*, 470 F.3d 985, 989 (10th Cir. 2006)).

[45] *Ernest v. Lockheed Martin Corp.*,Civil Action No. 07-cv-02038-WYD-KLM, 2008 U.S. Dist. LEXIS 59985, 2008 WL 2945608, at *1 (D. Colo. July 28, 2008)(citation omitted).

[46] *Cache La Poudre Feeds, LLC*, 244 F.R.D. at 620 (citing, *Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 216 (S.D.N.Y. 2003)).

which are present show abnormal operation of the devices.  FatPipe makes no explanation for the absence of events in the logs or for the corruption of these logs.  FatPipe has no evidence that XRoads' code deleted or corrupted the logs, and Ms. Datta's qualifications to examine the code were minimal.  FatPipe's possible explanations as to the absence of such logs due to XRoads' remote access of the devices or automatic update procedures are merely fantastic speculation without evidentiary support.  FatPipe's argument that the XRoads devices were somehow faulty when they were shipped or had some inherent problem that would later delete log files is mere speculation.

These explanations contrast with FatPipe's carelessness in handling the cards which contain the logs; with FatPipe's failure to back up the cards before or after testing; and with FatPipe's general inattention to the importance of these records of device activity.


### Nature of Sanctions

Federal courts have inherent power to impose sanctions for litigant's actions which interfere with the adjudication of a case.[47]  The court has broad discretion as to the nature of sanctions.  As one court explained:

> [T]he determination of an appropriate sanction, if any, is confined to the sound discretion of the trial judge and is assessed on a case-by-case basis. To this end, [a]ppropriate sanctions should (1) deter the parties from engaging in spoliation; (2) place the risk of an erroneous judgment on the party who wrongfully created the risk; and (3) restore the prejudiced party to the same position [it] would have been in absent the wrongful destruction of evidence by the opposing party.   Further,
>
> > It is well accepted that a court should always impose the least harsh sanction that can provide an adequate remedy. The choices include – from least harsh to most harsh –

---

[47] *Jordan F. Miller Corp. v. Mid-Continent Aircraft Serv., Inc.*, No. 97-5089, 1998 WL 68879, at *3 (10th Cir. Feb. 20, 1998)).

> further discovery, cost-shifting, fines, special jury
> instructions, preclusion, and the entry of default judgment
> or dismissal (terminating sanctions).  The selection of the
> appropriate remedy is a delicate matter requiring a great
> deal of time and attention by a court.[48]

"Federal courts have authority to impose a variety of sanctions for spoliation including dismissal of the action."[49]  In the Tenth Circuit, courts weigh several factors in determining an appropriate sanction:  "(1) the degree of actual prejudice to the [moving party]; (2) the amount of interference with the judicial process; (3) the culpability of the lnon-moving party]; (4) whether the court warned the party in advance that [a dispositive sanction would be likely] for non-compliance; and (5) the efficacy of lesser sanctions."[50]  "When deciding whether to sanction a party for the spoliation of evidence, courts have considered a variety of factors, two of which generally carry the most weight:  (1) the degree of culpability of the party who lost or destroyed the evidence; and (2) the degree of actual prejudice to the other party."[51]  "[T]he destruction need not be in bad faith to warrant spoliation sanctions."[52]

XRoads is prejudiced by FatPipe's failure to protect and preserve these logs because the evidence of such testing is unreliable.  Without the log information, XRoads is effectively deprived of the opportunity to examine and verify the purported testing, inspection or other uses and results of the XRoads devices allegedly performed by FatPipe.

Further, XRoads has incurred substantial attorneys' fees and costs in pursuit of the

---

[48] *Medcorp, Inc. v. Pinpoint Techs., Inc.*, Civil Action No. 08-cv-00867-MSK-KLM, 2010 WL 2500301, at *2 (D. Colo. June 15, 2010)(citations and quotation marks omitted).

[49] *Smith v. Slifer Smith & Frampton /Vail Assocs. Real Estate, LLC*, Civil Action No. 06-cv-02206 JLK, 2009 WL 482603, at *3 (D. Colo. Feb. 25, 2009) (quoting *Kokins v. Teleflex Inc*., Civil Action No. 06-cv-01018-WDM-PAC, 2007 WL 4322322, at *2 (D. Colo. Dec. 6, 2007)).

[50] *Ehrenhaus v. Reynolds*, 965 F.2d 916, 921 (10th Cir. 1992)(citations omitted).

[51] *Kokins*, 2007 WL 4322322, at *2 (quoting *Jordan F. Miller Corp.,* 1998 WL 68879, at *4.)).

[52] *Kokins*, 2007 WL 4322322, at *2.

missing log information and attempting to determine how or why the log information was destroyed, lost or otherwise became spoliated.  FatPipe had a duty to preserve the log information and to guard it against spoliation.  FatPipe failed in this duty through no fault of XRoads.  Having breached its duty to preserve and maintain relevant evidence, it would be patently unfair to XRoads to allow any evidence of tests or use of the XRoads devices in FatPipe's possession to be introduced at a trial in this matter or otherwise used in connection with this litigation.  The magistrate judge does not believe that terminating sanctions are appropriate.  There may be other issues in this case that are rendered more difficult if evidence of testing of the logs is excluded.  However, it is premature to make that assessment at this point in the case.

XRoads has requested preclusion of evidence and/or dismissal of this case together with attorneys' fees and costs as sanctions.   Terminating sanctions would be excessive.   "[A] terminating sanction is justified in only the most egregious cases, such as where a party has engaged in perjury, tampering with evidence, or intentionally destroying evidence by burning, shredding, or wiping out computer hard drives."[53]  Here it is appropriate to simply exclude any results of Ms. Datta's testing from evidence and to award XRoads its expenses, including attorneys' fees in this motion.

---

[53] *Medcorp*, 2010 WL 2500301 at *2 (citing  *Pension Committee of the Univ. of Montreal Pension Plan v. Banc of America Securities*, 685 F. Supp. 2d 456, 469-70 (S.D.N.Y. 2010)).

14

## ORDER

It is hereby ORDERED that:

1.      XRoads' Motion for Sanctions and Dismissal for Evidence Tampering and Spoliation[54] is GRANTED IN PART.

2.      All evidence of Ms. Datta's testing of the XRoads Edge devices in FatPipe's possession is precluded from being introduced into or otherwise used as evidence.

3.      FatPipe shall pay the expenses, including attorneys' fees and costs, incurred by XRoads in connection with bringing the Motion for Sanctions.

4.      XRoads shall submit a Motion for Attorneys' Fees and Costs within fourteen (14) days.  FatPipe shall submit a response to that motion within fourteen (14) days thereafter and may in its discretion submit an itemization of its attorneys' fees and costs to provide for comparison of the reasonableness of the amount requested by XRoads.

5.      FatPipe's Motion to Strike the Declaration of Daren French[55] is MOOT based upon the testimony and exhibits received as evidence at the evidentiary hearing.

DATED this 23rd day of January, 2012.

BY THE COURT:

Magistrate Judge David Nuffer

---

[54] Docket no. 301, filed April 8, 2011.

[55] Docket no. 341, filed May 27, 2011.