IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| FATPIPE NETWORKS INDIA LIMITED, now known as FATPIPE NETWORKS LTD.,, <br><br>                    Plaintiff, <br><br> v. <br><br> XROADS NETWORKS, INC., a Delaware corporation, <br>                  Defendant. | ***SEALED*** <br><br> **MEMORANDUM DECISION AND ORDER DENYING PLAINTIFF'S MOTION FOR SANCTIONS UNDER RULE 37 AND THE INHERENT POWERS OF THE COURT** <br><br> Case No. 2:09-cv-00186-DN <br><br> District Judge David Nuffer |

Plaintiff FatPipe Networks, Ltd., ("FatPipe") filed a Motion for Sanctions on March 6, 2012 based upon Defendant XRoads Networks, Inc.'s ("XRoads") alleged spoliation, failure to comply with court orders, and interference with the judicial process.[1]  After careful review of the submissions,[2] FatPipe's Motion for Sanctions is DENIED.

FatPipe also moves to strike the declaration of Mr. French which was filed in support of XRoads' Opposition Memo.[3] For the reasons stated below, FatPipe's motion to strike is DENIED.

---

[1] FatPipe's Motion for Sanctions under Rule 37 and the Inherent Powers of the Court ("Motion for Sanctions"), docket no. 445, filed March 6, 2012.

[2] Motion For Sanctions; FatPipe's Memorandum in Support of Its Motion for Sanctions under Rule 37 and the Inherent Powers of the Court ("Memo in Support"), docket no. 452, filed under seal March, 7, 2012; Defendant's Opposition RE Rule 37 ("Opposition Memo"), docket no. 473, filed April 5, 2012; FatPipe's Reply Memorandum in Support of its Motion for Sanctions under Rule 37 and the Inherent Powers of the Court ("Reply Memo"), docket no. 489, filed April 25, 2012.

[3] FatPipe Networks' Motion to Strike Declaration of Daren French (Dkt. No. 473-1) ("Motion to Strike"), docket no. 492, filed April 26, 2012.

# TABLE OF CONTENTS

TABLE OF CONTENTS..................................................................................................... 2

MOTION FOR SANCTIONS [445]................................................................................... 2

    Standard for Sanctions .................................................................................. 4

    Discussion ....................................................................................................... 6

        I.       Spoliation ..................................................................... 7

        II.     Failure to Comply with Court Orders ...................... 20

        III.    Interference with Judicial Process ......................... 22

    Conclusion .................................................................................................... 27

MOTION TO STRIKE [492]........................................................................................... 27

ORDER ........................................................................................................................... 29

# MOTION FOR SANCTIONS [445]

FatPipe moves for sanctions against XRoads for "1) spoliation, 2) failure to comply with court orders, and 3) interference with the judicial process."[4]  FatPipe argues sanctions are warranted because XRoads committed spoliation when it failed to preserve and produce code and firmware/software;[5] failed to maintain a version control system;[6] destroyed firmware;[7] produced incomplete firmware;[8] intentionally mislabeled files;[9] failed to preserve and produce certain devices;[10] failed to maintain log files;[11] and failed to produce a device referred to in the parties' filings as "the eBay device."[12]  FatPipe also argues XRoads failed to comply with court orders and interfered with the judicial process by misrepresenting facts and being evasive in discovery responses;[13] altering Mr. DeLoach's expert report;[14] and providing inconsistent

---

[4] Motion for Sanctions, at 1.

[5] Memo in Support, at 1, 2, 8, 28.  The parties use the terms "firmware" and "software" interchangeably.  This Memorandum Decision and Order will do the same.

[6] *Id.* at 4.

[7] *Id.* at 26.

[8] *Id.* at 29.

[9] *Id.* at 33.

[10] *Id.* at 8.

[11] *Id.* at 10.

[12] *Id.* at 13.

[13] *Id*. at 5, 18.

testimony through Mr. French.[15]  XRoads' actions, FatPipe argues, should be met with

"terminating sanctions" (i.e., summary judgment in favor of FatPipe) because "it is not possible

to fashion sanctions that will balance out the prejudice to FatPipe, short of entering summary

judgment for FatPipe.[16]  However, FatPipe also asks for alternative sanctions if terminating

sanctions are not awarded, such as vacating a protective order previously entered in this case;

ordering an adverse inference to be drawn against XRoads for destroying code and documents;

prohibiting XRoads from putting on certain testimony; striking the expert report of Mr.

DeLoach; and striking portions of the expert report of Mr. French.[17]

XRoads responds by asserting that FatPipe's Motion for Sanctions should not be granted

because FatPipe "cannot satisfy its burden of showing prejudice"[18] and because Rule 37(e) acts

as a safe harbor for any electronically stored information that may have been overwritten.[19]

XRoads points out that it "has endeavored to locate additional firmware and code, and XRoads

has produced to Fatpipe [sic] the fruits of those efforts or offered to make them available for

inspection."[20]  XRoads notes that it has produced at least 23 versions of its code/firmware to

FatPipe, but that production "did not assist Fatpipe [sic] in proving infringement because there is

no infringement here."[21]  XRoads further argues that "[i]n addition to the 23 versions of

firmware/code produced by XRoads via discovery, Fatpipe [sic] has had two actual XRoads

devices in its own possession for years for whatever testing and independent analyses it saw

---

[14] *Id.* at 21-22.

[15] *Id.* at 14-15, 40-42.

[16] *Id.* at 52.

[17] *Id.* at 53-54.

[18] Opposition Memo at 39.

[19] *Id*. at 37.

[20] *Id.* at 2.

[21] *Id.*

fit."[22]  In short, XRoads' argument is that "Fatpipe [sic] has no competent evidence of infringement or true prejudice" even though FatPipe has had ample time conduct investigations and has had sufficient code and firmware to do so.[23]  XRoads highlights this point by emphasizing that "Fatpipe's [sic] own retained experts even previously noted they had sufficient code/firmware to determine infringement . . . ."[24]

**Standard for Sanctions**

Under Rule 37, a court may issue sanctions for spoliation "[i]f a party fails to provide information . . . as required by Rule 26(a) or (e), unless the failure was substantially justified or is harmless."[25]  Rule 37 also provides: "Absent exceptional circumstances, a court may *not* impose sanctions under these rules on a party for failing to provide electronically stored information lost as a result of the routine, good-faith operation of an electronic information system."[26]

The Advisory Committee Notes to Rule 37 explain that "the ordinary operation of computer systems creates a risk that a party may lose potentially discoverable information without culpable conduct on its part[,]" and that "[t]he 'routine operation' of computer systems includes the alteration and overwriting of information, often without the operator's specific direction or awareness . . . . Such features are essential to the operation of electronic information systems."[27]

---

[22] *Id.* at 2-3.

[23] *Id.* at 5.

[24] *Id.* at 3.

[25] Fed. R. Civ. P. 37(c)(1).

[26] Fed. R. Civ. P. 37(e) (emphasis added).

[27] Fed. R. Civ. P. 37, Advisory Committee Notes.

When a party seeks sanctions for spoliation, the "movant has the burden of proving, by a preponderance of the evidence, that the opposing party failed to preserve evidence or destroyed it."[28]  Spoliation is defined as "the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation."[29]  "A spoliation sanction is proper where (1) a party has a duty to preserve evidence because it knew, or should have known, that litigation was imminent, and (2) the adverse party was prejudiced by the destruction of the evidence."[30]

Federal courts have broad discretion as to the nature of sanctions.[31]  As one court in the Tenth Circuit has explained: "[T]he determination of an appropriate sanction, if any, is confined to the sound discretion of the trial judge and is assessed on a case-by-case basis."[32]  "[A] terminating sanction is justified in only the most egregious cases, such as where a party has engaged in perjury, tampering with evidence, or intentionally destroying evidence by burning, shredding, or wiping out computer hard drives."[33]  Only when "the aggravating factors outweigh the judicial system's strong predisposition to resolve cases on their merits" is dismissal an appropriate sanction.[34]

Because "dismissal represents an extreme sanction appropriate only in cases of willful misconduct[,]"[35]

---

[28] *Ernest v. Lockheed Martin Corp.*,Civil Action No. 07-cv-02038-WYD-KLM, 2008 U.S. Dist. LEXIS 59985, 2008 WL 2945608, at *1 (D. Colo. July 28, 2008) (unpublished) (citation omitted).

[29] *Id.* (citation omitted).

[30] *Burlington Northern & Santa Fe Ry. Co. v. Grant*, 505 F.3d 1013, 1032 (10th Cir. 2007) (citation omitted).

[31] *Lee v. Max Int'l, LLC*, 638 F.3d 1318, 1320 (10th Cir. 2011).

[32] *Medcorp, Inc. v. Pinpoint Techs., Inc.*, Civil Action No. 08-cv-00867-MSK-KLM, 2010 WL 2500301, at *2 (D. Colo. June 15, 2010) (unpublished) (citation and quotation marks omitted).

[33] *Id.* (citation omitted).

[34] *Id.*

[35] *Ehrenhaus v. Reynolds*, 965 F.2d 916, 920 (10th Cir. 1992).

a court should ordinarily consider a number of factors, including: (1) the degree of actual prejudice to the defendant; (2) the amount of interference with the judicial process; . . . (3) the culpability of the litigant[]; (4) whether the court warned the party in advance that dismissal of the action would be a likely sanction for noncompliance; and (5) the efficacy of lesser sanctions.[36]

For example, in *Philips*,[37] dismissal was an appropriate sanction for the spoliation of evidence because the plaintiff carried its burden to show that the defendant BCT committed "egregious" discovery abuses.[38]  Specifically, "[c]ourt orders were disobeyed, documents were intentionally and irretrievably destroyed, efforts were made to erase evidence of the destruction, and BCT employees lied under oath."[39]  Further, "BCT did not merely refuse to produce documents. It intentionally destroyed documents and attempted to cover-up the electronic deletions within hours after Judge Alba granted Plaintiffs' *third* motion to compel.  BCT then compounded the problem by misrepresenting information about the issue while under oath."[40]  Thus, it was very clear in *Philips* that egregious discovery abuses had taken place and terminating sanctions were justified.

### Discussion

As noted above, FatPipe's Motion for Sanctions is based on "1) spoliation, 2) failure to comply with court orders, and 3) interference with the judicial process."[41]  Within these three general categories, FatPipe has leveled several accusations against XRoads, which are set forth below.  Both parties' filings were highly disorganized, which made the papers extremely difficult and burdensome to compare and review.

---

[36] *Id.* at 921 (citations and quotation marks omitted).

[37] *Philips Electronics North America Corp. v. BC Technical*, 773 F.Supp.2d 1149 (D. Utah 2011).

[38] *Id.* at 1158.

[39] *Id.*

[40] *Id.* at 1156.

[41] Motion for Sanctions, at 1.

## I.   Spoliation

*Failure to Preserve and Produce Code and Firmware*

FatPipe contends that "XRoads had a duty to preserve its firmware along with other documents" at least as of 2009, but "failed to do so."[42]  FatPipe argues that "[c]omplete firmware should have been produced both under [the applicable] patent rules, and the discovery propounded by FatPipe at the earliest stages of the case. It was not, and as a result relatively few versions of firmware have been produced."[43]  FatPipe also alleges that XRoads should have produced the source code for the software, but "XRoads did not fully comply with this obligation."[44]  XRoads states that it "demonstrated good faith"[45] in producing code and firmware and that "Fatpipe misrepresents the firmware which has been produced . . . ."[46]

FatPipe exaggerates its claims against XRoads.  First, over one thousand pages of code and other firmware information have been provided to FatPipe since the commencement of this litigation, including XRoads' code from 1999, 2002, 2005, and 2008.[47]  Throughout this time, XRoads made efforts to "collect all available marketing, white papers, and other documents which may be required for this lawsuit and placed them on [its] server and setup a backup system to ensure they were available."[48]  XRoads also "sought to obtain firmware from old customers which may have versions of code that existed prior to the beginning of this lawsuit."[49]

---

[42] Memo in Support at 1-2.

[43] *Id.* at 1.

[44] *Id.* at 8.

[45] Opposition Memo at 11.

[46] *Id.* at 13.

[47] Declaration of Daren French in Support of Defendant's Opposition to Motion for Sanctions ("French Decl.") at 34, docket no. 473-1, filed April 5, 2012.

[48] Opposition Memo at 19.

[49] *Id.* at 18.

While a party cannot satisfy its discovery obligations simply by dumping a large quantity of pages on its opponent, this is not what XRoads did.  Rather, it disclosed all the code and firmware it could acquire that was relevant to this litigation.[50]  It also began retaining copies of all new code versions in a file directory structure within its server.[51]  It also made Mr. French, the programmer of the XRoads Edge devices, available for multiple depositions.[52]  It is true that some builds of firmware could not be obtained and produced, but FatPipe's argument that XRoads has failed to produce code and firmware is not correct. The code and firmware FatPipe claims was not produced was not retrievable by XRoads at all.  Indeed, Mr. Hollaar, FatPipe's own expert in this case never mentioned any issues with the functionality of the code and firmware that was produced, which means he had enough information to determine infringement based on what was disclosed by XRoads.[53]  Thus, there is not enough evidence to show that XRoads has failed to preserve and produce sufficient code and firmware.

Moreover, FatPipe has had in its possession at least two devices that it purchased prior to the commencement of this litigation. They contain XRoads' code and firmware.[54] Those devices could have been used to acquire and inspect the code and firmware or conduct any other analyses FatPipe desired.  Thus, between all the disclosures from XRoads, the devices obtained by FatPipe, and all the questioning of experts on both side of the case, FatPipe received from XRoads a significant amount of code and firmware.  FatPipe's failure to find information favorable to its case does not warrant sanctions against XRoads.

---

[50] French Decl. at 23.

[51] *Id.* at 16.

[52] *Id.*

[53] *Id.* at 23.

[54] *Id.* at 24.

*Failure to Maintain a Version Control System*

Despite the production of the information described above, FatPipe still argues this was not enough.  FatPipe asserts that, pursuant to court order, XRoads should have adopted "a version control system 'normally used in the industry' to track changes" to its code and firmware.[55]  In response, XRoads notes that it historically did not track any changes made to firmware and code, but rather made modifications as they became necessary and, during the litigation, began retaining copies of all new code versions on a file directory structure within its server.  XRoads also claims that once it was ordered to begin using version control software, it took steps to do so.

Prior to the commencement of this lawsuit, XRoads did not use a version tracking system.  However, "[u]pon it becoming clear that this lawsuit would continue, XRoads began retaining copies of all new code versions through the creation of a file directory structure within its server.  This file directory allowed XRoads to maintain copies of each new version of code within its own unique directory and do a better job of maintaining the code for historical reference."[56]  Further, since being ordered to use a version tracking system "normally used in the industry,"[57] XRoads has implemented the use of an open-source version tracking system (CVS) which XRoads believes "has proven to be more difficult" than using the file directory process used earlier.[58]  XRoads has made efforts to use CVS in order to comply with the order.  Additionally, XRoads produced a "ChangeLog," which contains information about how firmware has been modified over time.  According to XRoads, there is no other directory or

---

[55] Opposition Memo at 4.

[56] French Decl. at 60.

[57] Preservation Order Pursuant to Memorandum Decision and Order Granting Motion for Scheduling Conference ("136 Order") at 2, docket no. 136, filed February 1, 2010.

[58] French Decl. at 60.

database that holds information about firmware changes, but FatPipe seeks additional information—on top of what has already been disclosed—that simply does not exist.[59]

XRoads is correct.  XRoads took steps to institute a version control system after it was ordered to do so.  Although XRoads' prior method of overwriting prior versions of code and firmware without tracking those changes is a poor way to retain data, this practice did not result in spoliation requiring sanctions.  After it was required to implement an official version control program, XRoads began to track and control version changes.  While implementation of the new program has been slow, and it may not be the type of version control software FatPipe uses or prefers for itself, XRoads has not violated Rule 37 by using an open source version control program.  What is clear is that XRoads has successfully provided "multiple productions of code to Fatpipe [sic] since the Court's 112 order without any response from Fatpipe [sic] stating that such productions were less than 100% acceptable."[60]

*Destruction of Firmware*

In addition to the claims that XRoads failed to preserve firmware and failed to appropriately track changes to its versions of firmware, FatPipe also argues that XRoads purposefully destroyed "91 versions of firmware since initiation of the lawsuit, while producing only 21 versions of firmware."[61]  FatPipe argues this destruction occurred by XRoads' practice of overwriting older versions of firmware with newer versions, or allowing customers to overwrite older versions of firmware by downloading new versions.  This practice, FatPipe contends, violated court orders and made it impossible for FatPipe to acquire the information it needed to determine infringement.

---

[59] *Id.* at 55.

[60] Opposition Memo at 17.

[61] Memo in Support at 26.

XRoads responds to these allegations by pointing out that the alleged destruction is "unsupported by any evidence"[62] and that it "has never overwritten code which it controlled and/or maintained."[63]  It points out that it allowed customers the option of upgrading to new firmware when it became available because it was running a business during this litigation, and running the business required offering its customers the option of upgrading to the latest capabilities in XRoads' products.  It could not prohibit its customers from using newer firmware or insist that they continue to use outdated versions because such a policy would cause unnecessary harm to the business.

While it is true that XRoads "cannot force customers to send in their production devices in order to attempt to obtain older versions of firmware[,]"[64] XRoads also cannot, in the name of preserving its customer base, direct others to destroy evidence it could not destroy itself.  This would circumvent the obligation of a party to preserve information during a lawsuit.  But XRoads did not direct others to destroy evidence.  Rather, it sent an email to its customers asking them to provide their version information.  Several customers responded, and that process ultimately resulted in the collection of several older versions of code which had not already been obtained.  XRoads then produced that version information to FatPipe.[65]  It is simply not credible for FatPipe to argue that XRoads should have placed a moratorium on customer upgrades, and thereby cause confusion and angst within the customer base.  It is incorrect for FatPipe to argue that a customer's choice not to respond to XRoads' request is the same thing as XRoads' agents or managers destroying information on their own or instructing destruction of the information.[67]

---

[62] Opposition Memo at 13.

[63] *Id.* at 15.

[64] *Id.*

[65] *Id.*

[67] *See Philips*, 773 F.Supp.2d at 1165-1193 (discussing spoliation by agents and employees of company).

Nor is it true that XRoads failed to contact its customers.  FatPipe claims that XRoads failed to reach out to all its customers, and supports this argument with references to a deposition of Mr. French, where FatPipe's counsel repeatedly names companies and asks Mr. French if XRoads contacted that alleged customer.[68]  Mr. French states he does not know if many of the companies are current customers, but would provide a listing of the customers to FatPipe if desired.  FatPipe's counsel uses this deposition exchange to argue that the email was not sent to those customers.  However, this is not an accurate representation of Mr. French's testimony.  Mr. French was simply stating he did not remember if those particular parties were current customers, and therefore could not say with certainty whether they were contacted as part of the request for version information.  Mr. French repeatedly stated to FatPipe's counsel that if the company is "on that listing from our website, at some point they were a client.  I do not know if any of those are currently clients."[69]  Yet FatPipe's counsel apparently seeks to use this as evidence that XRoads in fact did not contact those customers.  FatPipe's deceptive references to Mr. French's testimony are not convincing.  XRoads sent the request to as many current customers as it could, and Mr. French's failure to remember every customer on the list does not cast doubt on that fact.  Thus, XRoads complied with the order, and FatPipe certainly has not carried its burden to show destruction of firmware by XRoads.

FatPipe alleges spoliation based on the assumption of sequential version numbering, but there is no proof that XRoads numbered its versions and builds sequentially.  For example, FatPipe alleges that the following versions of firmware were spoliated: "3.4.3 Builds 223 through 245, excepting Builds 230 and 245 . . . ; 3.5.5. Builds 208 through 245, except Build 230

---

[68] Deposition Transcript Excerpt of Mr. French at 165-180, Exhibit 9 to Opposition Memo, docket no. 452-8, filed under seal March 7, 2012.

[69] *Id.* at 177.

. . . ; and 4.0.x Builds 100-153 (except Builds 111, 120, 127-141).[70]   However, XRoads—the

party who created and released the versions at issue—does not agree that versions and builds

were numbered as FatPipe alleges.  As XRoads points out, "XRoads has not always used version

designations in order, i.e. 3.4, 3.5 . . . 4.0."[71]   Thus, FatPipe has not presented a convincing

argument that versions and/or builds have been destroyed because it has failed to establish a

crucial element: how many total versions existed in the first place.  FatPipe's numbers are

calculated on unsubstantiated and challenged assumptions.  Therefore, FatPipe does not know

which versions may or may not have been missing, since the number of versions that actually

existed is not simply determined by looking at the first and last numbers of a version or build.

Only one version and build has been identified as actually existing but missing (version

3.5, build 245).[72]   One missing build among the many other builds that were produced does not

support a spoliation sanction, absent some showing it was destroyed without justification or that

its loss harmed FatPipe in some way.  FatPipe has not alleged this particular build had any

special significance or unique information; rather, FatPipe's claim is only that the build wasn't

produced.  As FatPipe has previously been told in this case, "at this stage of the litigation, some

balance is needed as the value of the information sought is weighed in light of the issues in the

case to which those issues pertain."[73]   XRoads' failure to maintain its various versions and builds

is not wise, and, as was shown throughout discovery in this case, creates barriers to production of

those versions and builds at a later date.  But it does not follow that any piece of missing

information proves spoliation requiring a judicial remedy.  While it is true that "a case can turn

---

[70] Reply Memo at 16.

[71] French Decl. at 35 (ellipse in original).

[72] Deposition Transcript Exceprt of Mr. Hicks at 226, docket no. 452-9 (Exhibit 11), filed March 7, 2012.

[73] Memorandum Decision and Order Denying FatPipe's Motion for Sanctions for Failure to Comply with Court's Order Dkt. No. 382 at 2, docket no. 514, filed January 11, 2013.

on only a few key documents[,]"[74] FatPipe has not made a convincing argument that this missing

build would have assisted in establishing its infringement claims.  Therefore, FatPipe has not

carried its burden of showing that XRoads' actions support a Rule 37 violation for the alleged

destruction of firmware.  Accordingly, sanctions will not be granted against XRoads on this

basis.

### Production of "Incomplete" Firmware

Another spoliation concern to FatPipe is the content of the code and firmware that was

produced.  FatPipe claims there were inconsistencies with the xroads_version file, the

titlehome.html file, the xroads_wanopt_control.pl file, and the xroads_config_uploader.pl file.

Specifically, FatPipe claims its expert witness, Mr. Harr, was able to conclude that the

xroads_version file was "intentionally removed from all nine firmware versions produced by

XRoads."[75]  He concluded this because there was "no programmatic mechanism to remove this

file and no apparent reason why it should be removed in the course of normal operation[.]"[76]

However, at the same time, FatPipe admits that "Mr. Harr was able to use other files to

determine the version information for most of the releases . . . ."[77]  One of the files used to

determine version information was the titlehome.html file.

XRoads challenges the assertion that the files were deleted intentionally, and explains

that the reason for the missing files was that it could have experienced "remote access issues"

during the process of obtaining the information in discovery[78]—meaning the device was

accessed from a remote location and not all the code could be obtained due to download

---

[74] *Philips*, 773 F.Supp.2d at 1156.

[75] Memo in Support at 29.

[76] *Id.*

[77] *Id.* at 30.

[78] Expert Report Rebuttal at 11, docket no. 360-1, filed June 14, 2011.

timeouts.[79]  This error, apparent only after XRoads had attempted to acquire all pertinent

information, can hardly be compared to a situation "where a party has engaged in perjury,

tampering with evidence, or intentionally destroying evidence by burning, shredding, or wiping

out computer hard drives."[80]  Moreover, the harm was minimal because FatPipe's expert Mr.

Harr confirmed that the missing xroads_version file was not the only way to determine version

information; version information was available on the titlehome.html file, which was present on

nearly all devices.[81]  FatPipe did not identify a device that was missing both the xroads_version

*and* the titlehome.html file, and therefore cannot sustain its burden of showing spoliation on this

point.  Thus, although it is true that some information that was produced was incomplete, this

failure was "substantially justified" under Rule 37 because it was not a failure caused by

XRoads' intentional actions such as deleting or wiping out files.

With respect to the xroads_wanopt_control.pl file and the xroads_config_uploader.pl file,

FatPipe alleges that XRoads produced these files too late and in an altered state.  This is a

reiteration of the arguments FatPipe has made in previous filings.  These arguments have already

been addressed, and there is no need to re-analyze them again in this motion.[82]

### *Mislabeling of Files*

FatPipe also argues that XRoads intentionally mislabeled files in order to make it difficult

for FatPipe to conduct analysis on them.  FatPipe argues the files were not produced in the form

---

[79] French Decl. at 38-39.

[80] *Medcorp, Inc.*, 2010 WL 2500301, at *2 (citation and quotation marks omitted).

[81] Expert Report of Joshua Harr at 5, docket no. 339-2, filed under seal May 24, 2011 ("In six of the nine version produced by XRoads, the titlehome.html file existed *with the version specified*, even though the xroads_version file from which this information was originally take [sic] was absent." (emphasis in original)).

[82] *See* Memorandum Decision and Order Granting Motion for Scheduling Conference ("112 Order") at 9, docket no. 112, filed January 8, 2010 (granting extension and ordering additional discovery because "XRoads delayed production of *xroads_wanopt_control.pl*; and *xroads_config_uploader.pl* and then produced them without features that are important in this case.").

they were maintained, which constitutes spoliation.  These arguments are unconvincing.  First,

FatPipe is not arguing that the information was not produced; rather, the argument is that the

information was not packaged in a way it expected or desired.  Phrases such as "[t]he source

code . . . *appears* not to have been produced in the form in which it was maintained,"[83] which are

common throughout FatPipe's filings on this motion and form the basis for FatPipe's argument,

do not carry FatPipe's burden.  Second, absent a clear showing of concealment or destruction of

information, there is no basis to find a Rule 37 violation simply because files or folders have

obscure content or they are difficult to parse.  Surely the parties use different naming procedures

and protocols for file management, and it may even be true that XRoads' operations are

disorganized or poorly maintained in FatPipe's view.  But XRoads' alleged lack of effective data

management does not equate to spoliation.  Furthermore, even though there may be a large

amount of information, it was FatPipe who requested such a large amount of information.

FatPipe cannot now complain that the labeling nomenclature or the contents were not exactly

what FatPipe expected, when no such criteria were specified.

*Certain Devices Not Preserved*

FatPipe complains that the EdgeXOS 50 devices tested by Mr. DeLoach were not

preserved after he conducted his testing; that they were returned to inventory and not

maintained.[84]  Those devices were running version 4.0.[85]  In its Memorandum in Support,

FatPipe acknowledges that "[f]rom March through September 2010, 14 updates to version 4.0

(Versions 129-141) were produced pursuant to the Court's Preservation Order, (Dkt. no. 136.)

---

[83] Memo in Support at 33 (emphasis added).

[84] *Id.* at 8.

[85] *Id.* at 9.

(unnumbered productions)."[86]  Thus, even if the specific devices tested by Mr. DeLoach were

not provided to FatPipe, the error was harmless because FatPipe had in its possession the exact

same version of firmware and code that was on the devices it claims it needs.  It would be

redundant to require production of devices that contain the same code and firmware that has

already been produced.  Moreover, placing devices back in inventory is not the same type of

egregious "destruction" that has been addressed in other cases involving spoliation.[87]

*Failure to Maintain Log Files*

FatPipe also argues that XRoads spoliated evidence by failing to maintain log files of Mr.

French's and Mr. DeLoach's testing.[88]  This argument fails as well.  A review of Mr. French's[89]

and Mr. DeLoach's[90] expert reports shows that each of those witnesses provided screen shots

and explanations as to how testing was performed, including, as XRoads explains, "a 'log' of

what was done with the devices in order to generate the twelve associated packet dump, network

test and device screen shots which were produced and what those screen shots represent in terms

of the functionality of the devices as they were being tested."[91]  FatPipe even admits in its Memo

in Support that Mr. DeLoach provided screenshots "related to the November testing of the two

devices taken from XRoads' inventory and which formed the basis of his expert report . . . ."[92]

This type of report, while perhaps not technically a "log file," provides essentially the same

information as would a "log file" and shows what was happening within the devices during

testing.  And although FatPipe attempts to compare Mr. French's and Mr. DeLoach's lack of log

---

[86] Memo in Support at 26.

[87] *See Philips*, 773 F.Supp.2d at 1165-1193.

[88] Memo in Support at 10.

[89] Expert Report of Daren French, docket no. 335, filed May 24, 2011.

[90] Expert Report of Mike DeLoach ("DeLoach Expert Report"), docket no. 334-1, filed May 24, 2011.

[91] Opposition Memo at 33.

[92] Memo in Support at 11.

files with Ms. Datta's earlier failures in this case, the comparison is not supportable.  In Ms.

Datta's case, there was verifiable tampering as well as perjury, and there was a demonstrated

intention to deceive or defraud.  The same cannot be verified with Mr. French and Mr. DeLoach.

Again, XRoads' method of keeping track of its data may not be the way FatPipe would choose,

but XRoads has not violated Rule 37 in this regard. FatPipe has not shown that Mr. French of

Mr. DeLoach misrepresented information while under oath.

### *Failure to Provide the eBay Device*

FatPipe also argues at length that XRoads failed to provide to FatPipe "a device

[obtained] through an eBay auction, which contained pre-litigation firmware[.]"[93]  FatPipe

claims that even if the eBay device was not functional, XRoads still could have produced

"whatever firmware is present on the device's flash card."[94]  FatPipe further asserts that XRoads,

through its expert Mr. French, misrepresented the functionality of the eBay device.[95]

First, regarding the functionality of the eBay device, XRoads submits that "the eBay

device was initially functional but became non-functional after preliminary testing undertaken by

XRoads during which a power supply had failed."[96]  This is the same explanation XRoads has

given throughout the record.  Mr. DeLoach did not conclusively testify about the functionality of

the device, but Mr. French did.[97]  XRoads has not misrepresented the functionality of the device.

Further, to the extent FatPipe accuses XRoads of spoliation because the eBay device was

"blown up," this is not spoliation.  Sometimes evidence is altered or dismantled during discovery

---

[93] *Id.* at 3.

[94] *Id.*

[95] *Id.*

[96] *Id.* at 22.

[97] French Decl. at 42-43.

as experts and others conduct their analyses.[98]   Unless some degree of prejudice is shown, there

is no reason to issue sanctions.  FatPipe has failed to show how it was harmed or prejudiced by

not having the eBay device.  XRoads reasonably attempted "to obtain as much functionality and

testing information from the eBay device as possible, despite the problems encountered."[99]

      Next, with respect to making the device available for FatPipe's inspection, there is no

merit to this argument.  The following exchange took place during Mr. French's July 25, 2011

deposition:

> **Q [by Ms. Polich, FatPipe's counsel]** So you still have the device?
> **A [by Mr. French]** Still have the device. It's nonfunctional, sitting in the warehouse.
> **MR. OSTLER [XRoads's counsel]:** You're welcome to come and inspect it anytime.
> **BY MS. POLICH:**
> **Q** So it's nonfunctional?
> **A** Correct.
> **MR. OSTLER:** You've never asked to inspect it, but you're welcome to inspect it. That's why we sent a notice over in case you want to inspect it, but you never asked.[100]
> . . .
> **MS. POLICH:** Well --
> **MR. OSTLER:** You want to inspect the device? Have at it.
> **MS. POLICH:** Well, you blew it up. You blew it up.
> **THE WITNESS:** We didn't blow it up. That's a mischaracterization.[101]

This exchange makes it clear that, far from making the device unavailable for FatPipe's testing,

XRoads made an open offer for FatPipe to inspect the device.  Besides this exchange, the record

reflects that other offers have been made for inspection of the device.  Thus, XRoads did not fail

---

[98] *See, e.g.*, *Kokins v. Teleflex Inc.*, No. 06-cv-01018-WDM-PAC, 2007 WL 4322322 (D. Colo. Dec. 6, 2007) (unpublished).

[99] French Decl. at 62.

[100] Opposition Memo at 25.

[101] *Id.*

to make the device available for inspection.  It is just the opposite.  XRoads made the device available, but apparently FatPipe never accepted the offer.

Finally, with respect to the production of firmware on the device, XRoads argues: "the firmware on the [eBay] device was 3.4.3 Build 208, the same firmware version as was on the device purchase[d] by Fatpipe prior to the litigation" and "there cannot be any prejudice regardless of what XRoads did or did not do with the eBay device."[102]  Since FatPipe already had in its possession the version of firmware that was on the eBay device, there is no harm to FatPipe by not receiving a duplicate copy from XRoads.  As with the devices discussed above, it would be redundant to require production of firmware that is already in FatPipe's possession.

In the end, each of FatPipe's spoliation claims fail because FatPipe has failed to carry its burden of showing XRoads failed to preserve evidence or destroyed it, or that FatPipe has been harmed by such omissions.  The spoliation claims raised by FatPipe either fail to establish destruction of evidence, or the omissions by XRoads are substantially justified or harmless mistakes that caused FatPipe no prejudice.[107]

## II.   Failure to Comply with Court Orders

Next, FatPipe urges sanctions be imposed for XRoads' alleged failure to comply with court orders.  The orders in question are (1) the Memorandum Decision and Order Granting Motion for Scheduling Conference[108] and (2) the Preservation Order.[109]

---

[102] *Id.* at 3.

[107] *See Burlington Northern*, 505 F.3d at 1032 (citing *103 Investors I, L.P. v. Square D Co.*, 470 F.3d 985, 989 (10th Cir. 2006)).

[108] Memorandum Decision and Order Granting Motion for Scheduling Conference ("112 Order"), docket no. 112, filed January 8, 2010.

[109] Preservation Order Pursuant to Memorandum Decision and Order Granting Motion for Scheduling Conference ("136 Order"), docket no. 136, filed February 1, 2010.

Many of the arguments FatPipe makes here have been addressed separately above.  For example, FatPipe asserts that XRoads did not comply with the 112 Order because it failed to make a good faith effort to contact customers and "implicitly suggested to customers that they overwrite their earlier versions of source code."[110]  As explained above, there was no error in XRoads' contact with customers.  XRoads contacted its customers to obtain other firmware versions, and this resulted in the acquisition of versions of firmware that otherwise would not have been obtained.  This effort complied with the 112 Order.  FatPipe also argues that XRoads violated the Court's orders by not using a version control system.  This point was addressed above, and no Rule 37 sanctions will be imposed for this alleged failure.

FatPipe also argues that XRoads violated the Court's orders by "not obtain[ing] software on its own computers and devices."[111]  The 112 Order required XRoads to "immediately take all reasonable measures to secure and preserve any evidence of its software development and version history."[112]  FatPipe notes that Mr. Hicks, XRoads' customer support engineer, had Version 3.5 Build 245 installed on an EdgeXOS appliance but was not asked to produce it.  This is the only version and build identified by FatPipe as actually existing, but not produced.  As explained previously in this Decision and Order, one missing build among many other builds that were produced does not establish a spoliation sanction, absent some showing it was destroyed without justification or that the absence caused prejudice to FatPipe.  FatPipe has not alleged this build had any special significance or unique information or that FatPipe was prejudiced by this alleged error.  Rather, the weight of the evidence shows that XRoads took reasonable measures to preserve software development and version history information.

---

[110] Memo in Support at 37.

[111] *Id.* at 38.

[112] 112 Order at 13.

The final way in which FatPipe alleges XRoads violated the orders is by failing to produce software "continuously" since September 29, 2010.[113]  FatPipe asserts that there have been additional builds since at least May 31, 2011, and argues it should be entitled to them under the 136 Order which states: "This Order is intended to apply to any modifications made or caused by XRoads to any source code association with the Edge appliances . . . ."[114]  However, the 136 Order was intended to apply only until the discovery cut-off date (February 24, 2011). Therefore, Roads is correct that there was no obligation to continue to provide code and firmware beyond the discovery cut-off date.[115]  There is no Rule 37 violation for failing to "continuously" disclose code and firmware.

## III.     Interference with Judicial Process

Finally, FatPipe broadly asserts that "XRoads has repeatedly misrepresented information relevant to its discovery obligations and the preservation of evidence and the extent of the spoliation," which has interfered with the judicial process.[116]  FatPipe identifies four categories of information. Each will be discussed in turn.

*Site2Site Document*

FatPipe submits that the Site2Site Tunnel Details Document "has never been produced in any other form than as attached to the Partial Disclosure."[117]  However, no further explanation is given about why it would need to be produced in any other form.  FatPipe complains that the document was created solely for purposes of litigation but does not explain why it has come to that conclusion or why, if true, that would be worthy of sanctions.  Certainly many documents

---

[113] Memo in Support at 33.

[114] 136 Order at 2.

[115] Opposition Memo at 3.

[116] Memo in Support at 39.

[117] *Id.* at 24.

are created solely for litigation, especially in response to discovery requests or initial disclosures. Without more explanation of the argument, FatPipe has failed to show why sanctions would be warranted for this alleged failure.

It should be noted that in January 2010, XRoads disclosed a document entitled "Notes_Site2SiteClients.pdf," which, according to XRoads, was a document describing to customers how to set up the Site2Site client.[118]  To the extent FatPipe argues disclosure regarding Site2Site documents was deficient, the disclosed document cuts directly against that argument.  FatPipe had many opportunities to follow up on any Site2Site issues it may have identified after receipt of this document.

*Mr. DeLoach's Report*

FatPipe declares that what XRoads filed as Mr. Deloach's "expert report was not, in fact, the report he had prepared"[119] because the report "did not reflect the May testing of the eBay device or its associated screenshots"[120] and "excluded all of [Mr. Deloach's] screenshots from the November initial testing."[121]

First, with respect to the May eBay device testing, XRoads explains that the eBay device testing information was not relied on by Mr. DeLoach, so the report did not include the eBay device testing information for that reason.  XRoads explains that Mr. DeLoach may have misunderstood during his deposition that the eBay device testing information was being produced separately from his expert report, and that is why he testified that the expert report presented to him during his deposition was not his full report.  XRoads is quick to point out,

---

[118] French Decl. at 20-21.

[119] Memo in Support at 3.

[120] *Id.* at 22.

[121] *Id.*

however, that Mr. DeLoach also stated in his deposition that the report was not based on the May testing of the eBay device, and the report was not missing any information.[122]

Second, it is unclear what November screenshots have been omitted, as the DeLoach report contains screenshots of his work. The May testing was not included in the report. The only other testing that would apply would be the November testing, for which screenshots have evidently been included in the report.[123] XRoads further submits that Mr. Deloach testified that "the report is his work, that he is unaware of any meaningful substance being left out, and that the only difference he noted was formatting."[124]

Given Mr. DeLoach's testimony that the report contained all pertinent information he relied on, there is no basis to conclude that the use of Mr. DeLoach's report interfered with the judicial process. The content of the report has been approved by Mr. DeLoach, and the explanation provided for the seemingly contradictory testimony is that Mr. DeLoach misunderstood that the May testing he performed on the eBay device would not be part of his final report because that testing was interrupted by the failure of the device. This kind of misunderstanding, while it shows a lack of communication and coordination between counsel and expert witness, does not abuse the judicial process in a manner that would warrant sanctions.

*Exhibits J and L-2 to DeLoach Report*

FatPipe also alleges that XRoads failed to include certain exhibits with Mr. DeLoach's report on the eBay device.[125] Specifically, FatPipe argues Exhibit J and Exhibit L-2 are missing from the list of exhibits. To support this allegation, FatPipe includes an email exchange between counsel. It shows that FatPipe's attorney asked for the exhibits, and XRoads' attorney

---

[122] Opposition Memo at 19.

[123] *See* DeLoach Expert Report at 5-8.

[124] Opposition Memo at 21.

[125] Memo in Support at 18-21.

responded: "I enclose again a copy of Exhibit A and L-2. From inspection, it appears that L-2 is

an inadvertent blank file so you have not been missing anything as nothing existed. I am not

aware of a J that was not furnished to you."[126]  In response, FatPipe's attorney notes that Exhibit

A is not the same as Exhibit J, and requests Exhibit J as well as a statement from Mr. DeLoach

that Exhibit L-2 does not exist.[127]  XRoads' counsel answers these requests by pointing out that

Exhibit A contains the same information as Exhibit J, just in printed form *instead of a screen

shot*.[128]  XRoads' counsel repeats again there is not an Exhibit L-2 because it was a blank

screen.[129]  FatPipe's counsel refuses to accept those explanations and again asks for the exhibits

to be produced, along with an explanation from Mr. DeLoach.[130]  Nothing more is included from

the email exchange.

    In Mr. French's declaration, he explains that he was the one who created the eBay device

testing procedure, and he believes it was "perfectly reasonable to expect that Mr. DeLoach

understood the configuration diagram, which was a Visio diagram provided to Mr. DeLoach in a

printout, did not require a screen shot as it was already printed out and his understanding was

that it would be produced as Exhibit A."[131]  While there is an argument about whether Mr.

DeLoach misunderstood the instructions, this does not change the fact that there is no Exhibit J

because Mr. DeLoach did not take a screen shot.  As XRoads points out, FatPipe was provided

all information XRoads had with regard to the eBay device testing.  Thus, the discussion about

Exhibit J, which does not exist, and Exhibit L-2, which is a blank screen, is fruitless.  FatPipe has

---

[126] *Id.* at 20.

[127] *Id.*

[128] *Id.* at 21.

[129] *Id.*

[130] *Id.*

[131] French Decl. at 33.

supplied speculation about these exhibits, but has not provided any credible information to show there was sanctionable conduct.

*Mr. French's Report and Testimony*

Fatpipe alleges that "Mr. French lied about his examination of the eBay device"[132] and, contrary to his testimony, "relied upon his examination of the eBay device in his expert reports."[133] FatPipe also argues that Mr. French withheld eBay device SYSTEM and ALERT log files which contradict Mr. French's testimony.[134]

XRoads responds by stating that Mr. French in deposition "explained XRoads was not relying on the eBay testing as the substance for either his or DeLoach's expert opinion."[135] This has consistently been the testimony of Mr. French—that the eBay device testing did not form the basis of his conclusions. There is no indication Mr. French lied about his examination of the device.

Further, with respect to the eBay device SYSTEM and ALERT logs, FatPipe itself acknowledges they were received, as it purportedly uses them to establish the claim that they are contrary to Mr. French's testimony. Accordingly, there is no reason to believe the logs were withheld. Stronger evidence exists that FatPipe has not performed appropriate due diligence with the information it has been given, yet continues to accuse XRoads of malicious abuses. In comparing the filings of the parties, XRoads has gone into detail explaining how their devices operate, while FatPipe continues to search for infringement or ways XRoads has made a misstep during the discovery process. FatPipe's accusations are not credible or convincing.

---

[132] Memo in Support at 14.

[133] *Id.* at 15.

[134] *Id.* at 15-18.

[135] Opposition Memo at 8.

As an example of FatPipe's lack of diligence in researching the information, Mr. French lists eight separate versions of code, along with the date they were disclosed, which FatPipe claims are still unidentifiable.[136]  According to XRoads, this code was provided "over the course of at least five different productions" and it "is titled exactly as XRoads has stated it would be titled . . ."[137]  A disconnect between FatPipe's receipt of information and its ability to process it does not support sanctions against XRoads.

**Conclusion**

Rule 37 prohibits sanctions "[a]bsent exceptional circumstances."  Unless information is destroyed or not produced, and that destruction or lack of production causes prejudice to the opposing party, sanctions should not be imposed.

Here, FatPipe has failed to carry its burden to show exceptional circumstances or that XRoads failure to preserve information resulted in undue harm to XRoads. No conduct identified by FatPipe shows a basis for sanctions against XRoads.

Because FatPipe has failed to establish its claims under this Motion, terminating sanctions will not be granted.  Accordingly, there is no need for an analysis under the *Erenhaus* factors set forth earlier in this Decision and Order.

**MOTION TO STRIKE [492]**

FatPipe argues that the Declaration of Daren French, which was filed in support of XRoads' Memorandum in Opposition to the Motion for Sanctions, should be stricken on evidentiary grounds.[138] FatPipe argues the Declaration "consists almost entirely of narrative conclusions, hearsay and opinions with no foundation . . . [,] references documents generally,

---

[136] French Decl. at 36.

[137] Opposition Memo at 14.

[138] FatPipe Networks' Memorandum in Support of Motion to Strike the Declaration of Daren French (Dkt. No. 473-1) ("493 Memo in Support") at 2, docket no. 493, filed April 26, 2012.

without any citation . . . [and] contains statements that are within the sole knowledge of counsel."[139] FatPipe does not cite any authority in support of the Motion to Strike, but submits a redlined copy of the Declaration indicating the portions it would like to see stricken.[140]

In opposition, XRoads notes that "FatPipe fails in any way to specify for the Court or XRoads exactly what objections apply to what precise sections of the Declaration" and fails to provide "precise reasons for any individual objection to any part of the Declaration."[141]

XRoads is correct. Providing an alternative version of a witness's declaration, and then leaving it to conjecture as to what grounds objections are made, is not a proper form for objecting to evidence. FatPipe's list of reasons for objecting does not help because none of the reasons are tied to a particular objection. These blanket objections, without citation to authority, are insufficient.[142]

Foundation exists for the statements made in the Declaration because Mr. French is the primary product developer for XRoads.[143] He is the person who designed and developed the XRoads devices. Therefore, he can make statements and give opinions because he has personal knowledge of those facts and events.[144] Simply stating that the Declaration lacks foundation without explanation does not warrant striking the Declaration. And although FatPipe makes an attempt in its Reply brief to correct the deficiencies by raising a handful of specific statements in the Declaration it believes should be stricken, such attempts still fall short. FatPipe has not made

---

[139] 493 Memo in Support at 2.

[140] Declaration of Daren French in Support of Defendant's Opposition to Motion for Sanctions, Exhibit A to 493 Memo in Support, docket no. 493-1, filed April 26, 2012.

[141] Opposition of Defendant and Counter-Claimant XRoads Networks to Plaintiff FatPipe Networks' Motion to Strike Declaration of Daren French as to the Sanctions Motions, docket no. 502, filed May 14, 2012.

[142] Fed. R. Evid. 103 (requiring party to state "specific ground").

[143] Opposition at 2.

[144] See Fed. R. Evid. 701.

a convincing argument that all the statements it proposes to strike lack foundation or that the grounds for challenging the statements are "apparent from the context."[145] Accordingly, FatPipe's Motion to Strike is DENIED.

## ORDER

IT IS HEREBY ORDERED that FatPipe's Motion for Sanctions[146] is DENIED.

IT IS FURTHER ORDERED that FatPipe's Motion to Strike[147] is DENIED.

IT IS FURTHER ORDERED that because this Memorandum Decision and Order refers to material filed under seal, the parties shall meet and confer and FatPipe shall file within fourteen (14) days a redacted version of (a) this Memorandum Decision and Order, and (b) each sealed document cited in this Memorandum Decision and Order, unless excused by court order.

Dated September 22, 2015.

BY THE COURT:

David Nuffer
United States District Judge

---

[145] FatPipe's Reply Memorandum in Support of Motion to Strike the Declaration of Daren French at 4, docket no. 507, filed May 29, 2012 (citing Fed. R. Evid. 103(a)(1)(B)).

[146] FatPipe's Motion for Sanctions under Rule 37 and the Inherent Powers of the Court ("Motion for Sanctions"), docket no. 445, filed March 6, 2012.

[147] FatPipe Networks' Motion to Strike Declaration of Daren French (Dkt. No. 473-1) ("Motion to Strike"), docket no. 492, filed April 26, 2012.

United States District Court
for the
District of Utah
September 22, 2015


******MAILING CERTIFICATE OF THE CLERK******

RE:  Fatpipe Networks India v. Xroads Networks
     2:09-cv-00186-DN


Manny J. Caixeiro
PERKINS COIE LLP
30 ROCKEFELLER PLAZA 22ND FL
NEW YORK, NY  10112-0015

Timothy J. Carroll
PERKINS COIE LLP
131 S DEARBORN ST STE 1700
CHICAGO, IL  60603

Brent O. Hatch
HATCH JAMES & DODGE
10 W BROADWAY STE 400
SALT LAKE CITY, UT  84101

John C. O'Malley
NEWPORT TRIAL GROUP
4100 NEWPORT PL STE 800
NEWPORT BEACH, CA  92660

Jeffrey R. Olsen
1175 WOODMOOR DR
BOUNTIFUL, UT  84010

Blake T. Ostler
THOMPSON OSTLER & OLSEN
57 W 200 S STE 350
SALT LAKE CITY, UT  84101-3663

_____

Becky L. Harris, Deputy Clerk