IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| FATPIPE ENTWORKS INDIA LIMITED,<br><br>                 Plaintiff,<br>v.<br><br>XROADS NETWORKS, INC.,<br><br>                 Defendant. | ***SEALED***<br><br>**MEMORANDUM DECISION AND ORDER DENYING MOTION FOR SANCTIONS**<br><br>Case No. 2:09-cv-00186-DN<br><br>District Judge David Nuffer |

FatPipe's Motion for Sanctions for Ticket Database Spoliation ("447 Motion")[1] argues XRoads should be sanctioned for "multiple violations" that occurred "during discovery of the [XRoads] customer tickets and their database."[2] XRoads disagrees, arguing that the 447 Motion should be denied because it "is fraught with misrepresentations, distortions, and improper argument."[3] XRoads also believes it "should be granted its attorneys' fees and costs for responding" to the 447 Motion.[4] FatPipe provides no argument in its 86-page Reply to oppose XRoads' request for attorney's fees and costs.[5] For the reasons stated below, the 447 Motion is DENIED, and XRoads' request for attorney's fees is DENIED.

---

[1] Plaintiff FatPipe Networks' Motion for Sanctions for Ticket Database Spoliation and Discovery Violations ("447 Motion"), docket no. 447, filed March 7, 2012.

[2] 447 Motion at 1.

[3] Defendant's Opposition to Plaintiff's Motion for Sanctions as to Production of Ticket Information ("Opposition"), docket no. 471, filed April 5, 2012.

[4] Opposition at 1.

[5] Plaintiff's Reply to Defendant's Opposition [473] to Plaintiff's Ticket Database Sanctions Motion [447], docket no. 488, filed April 24, 2012.

**BACKGROUND**

During discovery, FatPipe served a request for production of documents on XRoads asking for, among other things, "[a]ll information maintained as part of the [XRoads] customer support center (including the ticket information)."[6] The ticket database is a record of customer inquiries for technical support with XRoads's responses. FatPipe sought the information in the belief that frank discussions between XRoads and its customers might reveal that XRoads' appliances and software had features that would reveal patent infringement.

After XRoads responded to the request, FatPipe filed a motion to compel[7] arguing that XRoads had not produced all the requested information.[8] The Court entered an order instructing XRoads to produce the requested information.[9] When FatPipe did not receive what it believed to have been ordered and the "parties failed to confer and find a suitable solution for the production of these files,"[10] another order was entered requiring XRoads to "deliver a native format copy of the customer ticket database to FatPipe subject to Confidential – Attorney's Eyes Only designation under the Stipulated Protective Order."[11] After XRoads provided "a disk containing four files in searchable electronic format"[12] and "a disk containing ten files in electronic

---

[6] FatPipe's Memorandum in Support of Motion to Compel Re: Plaintiff's Third Requests for Production of Documents and Request for Inspection ("351 Memo in Support") at 5, docket no. 352, filed June 8, 2011.

[7] Motion to Compel Re: Plaintiff's Third Requests for Production of Documents and Request for Inspection, docket no. 351, filed June 8, 2011.

[8] 351 Memo in Support at 5.

[9] Order Granting In Part FatPipe's Motions to Compel ("382 Order") at 5, docket no. 382, entered September 26, 2011 (requiring production of "all tickets"; Order Regarding Dispute over Customer Support Tickets ("408 Order") at 3, docket no. 408, entered November 2, 2011 ("XRoads must produce the entire customer ticket database in native form . . . .").

[10] 408 Order at 1.

[11] *Id.* at 3.

[12] FatPipe Networks' Memorandum Supporting Sanctions for Ticket Database Spoliation and Discovery Violations ("447 Memo in Support") at 11, docket no. 453, filed under seal March 7, 2012.

format,"[13] FatPipe filed the instant 447 Motion seeking sanctions for XRoads' failure to produce complete information.[14]

Due to the highly technical issues raised by FatPipe's motion for sanctions for ticket database spoliation and discovery violations, the court suggested that an expert or special master be appointed to inquire into the matter.[15] After further discussion between counsel, the parties submitted a Joint Statement[16] indicating they had "met and conferred as to the expert to be retained[,]" but had been "unable to agree on virtually all subjects pertaining to the expert."[17] The Joint Statement set forth the "respective positions" of the parties "on the pertinent issues."[18]

Afterreview of the Joint Statement, an Order[19] was entered stating that an expert would be appointed under Rule 706 of the Federal Rules of Evidence.[20] The Order set forth the factual history of the discovery dispute,[21] the claims FatPipe made, and XRoads' responses.[22] The parameters of the expert's work were defined:

> The expert's work will be performed in two phases. At the end of each phase, the expert will prepare a written report for the court and counsel. The written reports will be considered by the court with other information already provided on this motion, and are not conclusive of issues. The expert will be available for a hearing at the end of each phase at which the court and counsel may ask

---

[13] *Id.* at 12.

[14] *Id.* at 1.

[15] Letter from Judge David Nuffer to Barbara Polich, John Ogilvie, John O'Malley, and Blake Ostler, docket no. 515, dated January 10, 2013.

[16] Joint Statement of Parties Regarding Expert Process for Ticket Database Motion, docket no. 523, filed February 15, 2013.

[17] *Id.* at 1.

[18] *Id.*

[19] Order for Appointment of Court's Expert ("533 Order"), docket no. 533, filed March 6, 2013.

[20] *Id.* at 1.

[21] *Id.* at 3.

[22] *Id.* at 4.

3

questions. This hearing may occur by video conference. The court will determine at the conclusion of Phase I whether and when Phase II will proceed.[23]

Phase I was to examine the XRoads data produced to FatPipe, to evaluate FatPipe's concerns about unusability of the data. Phase II was to compare the data files in FatPipe's possession with the actual data on site at XRoads, to determine if XRoads had withheld or spoliated data before production.

Five candidates applied for appointment as the designated expert.[24] The court appointed Arman Gungor, Litigation Support Director at Meridian Discovery, LLC as the independent special expert.[25] The order identified specific questions to be answered in Phase I and in Phase II.

Mr. Gungor examined the materials in question, and issued a report with the following conclusions as to Phase I:

> The five (5) files identified on page 3 of Judge Nuffer's Order 533 are identical in both XRoads' and FatPipe's copy of the production. However, each copy contains a 6th file, an HTML file listing, which has different file names and contents in each copy.
>
> *In my opinion, the .frm, .myd and .myi files in FatPipe's possession are reasonably useable to replicate the information available to XRoads in its customer support ticket and response functions.* I determined that the .frm, .myd and .myi files contain the information necessary to perform all the tasks mentioned on page 6 paragraph B of Judge Nuffer's Order 533.
>
> I was able to access the ticket and response data without applying any customized configuration information to MySQL on both an Ubuntu Linux and a Windows XP system. *In my opinion, a configuration file is not essential or helpful for FatPipe to use the .frm, .myd and .myi files.*
>
> I contacted a sales specialist from Omnistar Interactive via e-mail, and found that Omnistar Live 6.0 software is no longer available for purchase. I was able to access the customer ticket and response information in the possession of FatPipe

---

[23] *Id.* at 5.

[24] *See* Joint Report Regarding Meet and Confer on Experts at 1, docket no. 535, field April 23, 2013.

[25] Order Appointing Court's Expert, docket no. 537, filed April 29, 2013.

without having access to Omnistar Live 6.0. *In my opinion, Omnistar Live 6.0 is not necessary for access to the customer support ticket and response information in FatPipe's possession.*

*In my opinion, it is not reasonably necessary for FatPipe to know what hardware and operating system XRoads uses in the normal course of business to access the customer support and ticket information. However, in my opinion, it is reasonably necessary for FatPipe to know which database server software (including version) XRoads uses in the normal course of business.*

*In my opinion, the .frm, .myd and .myi files in FatPipe's possession are reasonably understood as "native format".*

Information XRoads uses in its customer support ticket and response functions is stored in the "tickets" and "responses" database tables. I compared screenshots of two tickets in XRoads' Omnistar Live system to information found in the produced "tickets" and "responses" tables and identified mappings that outline how information Omnistar Live displays to end users is stored in the back-end database tables.

I determined that attachments in XRoads' customer support ticket and response database are accessible in the "tickets" and "responses" tables XRoads produced to FatPipe. I wrote a Python script (see Appendix I - Python Script Source Code) and was able to extract the attachments and group them in folders named after their parent ticket or response IDs. I also provided counts of attachment types by file extension.

I found that the "tickets" table contains 204 ticket records between 09/01/2011 and 01/31/2012 (inclusive) and the "responses" table contains 1,432 response records between 09/01/2011 and 01/31/2012 (inclusive).

XRoads' customer support ticket and response data is stored by, and accessed through MySQL. *In my opinion, XRoads' use of MySQL software to provide the customer support ticket and response data to FatPipe is a reasonable method for delivery of that data.*

*In my opinion, XRoads' use of mysqldump was not a reasonable method for delivery of the ticket and response data to FatPipe.*

Use of the "mysqldump -p omnistar tickets > ticket_dump" and "mysqldump -p omnistar responses > responses_dump" commands differs from use of the single command "mysqldump -p omnistar > native_database_copy" in that using the "mysqldump -p omnistar > native_database_copy" command would export the entire "omnistar" database to a file named "native_database_copy" rather than

export two individual tables ("tickets" and "responses") of the "omnistar" database to files named "ticket_dump" and "responses_dump".[26]

A hearing was held at the conclusion of Phase I, during which the parties' counsel questioned Mr. Gungor about his report.[27] Discussion also took place regarding whether to move to Phase II.[28] The parties disagreed, with XRoads arguing that Phase II was unnecessary and FatPipe arguing Phase II was necessary. The court indicated at the hearing that there was "nothing substantial" presented regarding the ticket database that "bears . . . on the issues in this case," but that it would "let FatPipe go to the end of the road on that."[30] The parties were ordered to submit simultaneous post-hearing briefs regarding "the questions which are not fully answered in Phase I" and whether Phase II is necessary.[31] After receiving the post-hearing briefing,[32] Mr. Gungor was ordered to proceed to Phase II.[33] Again, specific questions were posed.

At the completion of Phase II testing, Mr. Gungor issued a report with the following answers to the questions presented:

> Upon reviewing XRoads' Omnistar Live system, I found that while XRoads' production to FatPipe is reasonably usable, *it is incomplete as it is missing database tables that are used by the Omnistar Live software which contain information helpful to understanding the problems and solutions stated in the tickets and responses.*
>
> I reviewed screenshots of five (5) additional tickets as well as XRoads' Omnistar Live database and expanded the field mappings I had found during Phase I.

---

[26] Phase I Expert Report of Arman Gungor ("Phase I Report") at 2-3, docket no. 618, filed under seal September 21, 2015 (internal citations omitted) (emphases added).

[27] Transcript of August 1, 2013 Hearing ("Phase I Tr."), docket no. 552, filed August 9, 2013.

[28] *Id.* at 127-139.

[30] *Id.* at 138.

[31] *Id.*

[32] Supplemental Brief as to Ticket Sanctions Motion ("554 Supp. Brief"), docket no. 554, filed August 15, 2013; FatPipe Networks' Memorandum in Support of Phase II Examination ("555 Memo"), docket no. 555, filed August 15, 2013.

[33] Order for Phase II Work by Court's Expert, docket no. 556, filed August 17, 2013.

I found that the general functions provided by Omnistar Live software as implemented in the XRoads business were Support Tickets and Responses, Live Chat, Troubleshooter, Knowledge Base and Calendar.

I determined that the full name and version number of the Omnistar software in use at XRoads is "Omnistar Live Enterprise" version 6.0.

I found that the XRoads customer support ticket and response data is maintained in an integrated database with other XRoads management information.

I determined that data fields found in 32 different database tables are accessed in screens or reports produced by the XRoads management information system in the customer support ticket and response functions.

I found that email and ticket password fields are not mandatory in the customer support ticket and response functions of XRoads' system.

Examination of the database tables in FatPipe's possession as well as XRoads' Omnistar Live system revealed that all the data fields accessed in any screens or reports produced by the XRoads management information system in the customer ticket and response functions *were not provided by XRoads to FatPipe. I determined that some of these fields are helpful to understanding the problems and solutions stated in the tickets and responses.*

I determined that database logs do not constitute part of the XRoads customer support ticket and response dataset, and they are *not essential for FatPipe to access the data produced to it.*

*I determined that the attachments in the possession of FatPipe are in the same format as maintained by XRoads.*

I found that attachments to tickets and responses are accessed by clicking on hyperlinks in the Omnistar Live web interface and downloading the attachments to the user's local computer. Attachments are then opened using software available on the local computer.

*In my opinion, the ticket and response attachments are reasonably accessible to FatPipe.*

*I found that the database tables in the possession of FatPipe have the same columns as the corresponding tables maintained by XRoads.* However, XRoads' Omnistar Live database *is being actively used* and the contents of the tables maintained by XRoads are *different than the contents of the database tables in FatPipe's possession.*

> I found that newer ticket and response records in the Omnistar Live database maintained by XRoads contain attachments that are not present in the database tables in FatPipe's possession. However, when the two sets of tables are compared within the same ID and date range, *the database tables maintained by XRoads do not contain attachments which are not present in XRoads' production to FatPipe.*
>
> I determined that the attachments to tickets and responses present in the XRoads database have the *same file extensions (if any) as the corresponding attachments in XRoads' production to FatPipe.*
>
> *I determined that the ticket_id numbers which FatPipe asserts to be missing are in fact missing tickets.* Additionally, I found that the missing ticket_id listing provided by FatPipe is incomplete.
>
> In my opinion, *both parties' explanations regarding the missing ticket IDs make sense.* I found that using database or full system back-ups (to the extent available) would be a feasible way of restoring the tickets corresponding to missing sequential numbers. I also found that there is information in XRoads' Omnistar Live database that could be used to substantiate when and how certain tickets were deleted.
>
> In my opinion, a reasonable explanation as to why there are only around 5,000 tickets in XRoads' production to FatPipe is that XRoads' Omnistar Live database contained gaps in ticket records *due to deleted tickets and those gaps were reflected in XRoads' production to FatPipe.*[34]

At the conclusion of the Phase II testing and after Mr. Gungor issued his Phase II report, another hearing was held during which the parties questioned Mr. Gungor about his Phase II work.[35] The court indicated that there was not "much indication that XRoads failed to produce critical information for FatPipe's understanding."[36] Of course, FatPipe disagreed with this assessment and asked for 21 days to submit a post-hearing memorandum.[37] A briefing schedule

---

[34] Phase II Expert Report of Arman Gungor ("Phase II Report") at 2-3, docket no. 619, filed under seal September 21, 2015 (internal citations omitted) (emphases added).

[35] Transcript of December 3, 2013 Hearing ("Phase II Tr."), docket no. 588, filed December 11, 2013.

[36] *Id.* at 112-13.

[37] *Id.* at 113.

was set, and each party submitted yet another memorandum regarding the 447 Motion.[38] All told, the parties have submitted nearly 1,000 pages regarding this 447 Motion alone.

The usability of the data produced to FatPipe was established in Phase I. The comparability of the data produced to the original data files was established in Phase II.

## DISCUSSION

### Standard for Sanctions

Under Rule 37, a court may issue sanctions for spoliation "[i]f a party fails to provide information . . . as required by Rule 26(a) or (e), unless the failure was substantially justified or is harmless."[39] Rule 37 also provides: "Absent exceptional circumstances, a court may *not* impose sanctions under these rules on a party for failing to provide electronically stored information lost as a result of the routine, good-faith operation of an electronic information system."[40]

The Advisory Committee Notes to Rule 37 explain that "the ordinary operation of computer systems creates a risk that a party may lose potentially discoverable information without culpable conduct on its part[,]" and that "[t]he 'routine operation' of computer systems includes the alteration and overwriting of information, often without the operator's specific direction or awareness . . . . Such features are essential to the operation of electronic information systems."[41]

---

[38] Plaintiff's Supplemental Memorandum in Support of Plaintiff's Motion for Sanctions Relating to Defendant's Ticket Database [Dkt. No. 447], docket no. 605, filed under seal January 17, 2014; Defendant's Opposition to Plaintiff's Supplemental Memorandum in Support of Plaintiff's Motion for Sanctions, docket no. 608, filed January 31, 2014.

[39] Fed. R. Civ. P. 37(c)(1).

[40] Fed. R. Civ. P. 37(e) (emphasis added).

[41] Fed. R. Civ. P. 37, Advisory Committee Notes.

When a party seeks sanctions for spoliation, the "movant has the burden of proving, by a preponderance of the evidence, that the opposing party failed to preserve evidence or destroyed it."[42] Spoliation is defined as "the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation."[43] "A spoliation sanction is proper where (1) a party has a duty to preserve evidence because it knew, or should have known, that litigation was imminent, and (2) the adverse party was prejudiced by the destruction of the evidence."[44]

Federal courts have broad discretion as to the nature of sanctions.[45] As one court in the Tenth Circuit has explained: "[T]he determination of an appropriate sanction, if any, is confined to the sound discretion of the trial judge and is assessed on a case-by-case basis."[46] "[A] terminating sanction is justified in only the most egregious cases, such as where a party has engaged in perjury, tampering with evidence, or intentionally destroying evidence by burning, shredding, or wiping out computer hard drives."[47] Only when "the aggravating factors outweigh the judicial system's strong predisposition to resolve cases on their merits" is dismissal an appropriate sanction.[48]

Because "dismissal represents an extreme sanction appropriate only in cases of willful misconduct[,]"[49]

---

[42] *Ernest v. Lockheed Martin Corp.*, Civil Action No. 07-cv-02038-WYD-KLM, 2008 U.S. Dist. LEXIS 59985, 2008 WL 2945608, at *1 (D. Colo. July 28, 2008) (unpublished) (citation omitted).

[43] *Id.* (citation omitted).

[44] *Burlington Northern & Santa Fe Ry. Co. v. Grant*, 505 F.3d 1013, 1032 (10th Cir. 2007) (citation omitted).

[45] *Lee v. Max Int'l, LLC*, 638 F.3d 1318, 1320 (10th Cir. 2011).

[46] *Medcorp, Inc. v. Pinpoint Techs., Inc.*, Civil Action No. 08-cv-00867-MSK-KLM, 2010 WL 2500301, at *2 (D. Colo. June 15, 2010) (unpublished) (citation and quotation marks omitted).

[47] *Id.* (citation omitted).

[48] *Id.*

[49] *Ehrenhaus v. Reynolds*, 965 F.2d 916, 920 (10th Cir. 1992).

> a court should ordinarily consider a number of factors, including: (1) the degree of actual prejudice to the defendant; (2) the amount of interference with the judicial process; . . . (3) the culpability of the litigant[]; (4) whether the court warned the party in advance that dismissal of the action would be a likely sanction for noncompliance; and (5) the efficacy of lesser sanctions.[50]

For example, in *Philips*,[51] dismissal was an appropriate sanction for the spoliation of evidence because the plaintiff carried its burden to show that the defendant BCT committed "egregious" discovery abuses.[52] Specifically, "[c]ourt orders were disobeyed, documents were intentionally and irretrievably destroyed, efforts were made to erase evidence of the destruction, and BCT employees lied under oath."[53] Further, "BCT did not merely refuse to produce documents. It intentionally destroyed documents and attempted to cover-up the electronic deletions within hours after Judge Alba granted Plaintiffs' *third* motion to compel. BCT then compounded the problem by misrepresenting information about the issue while under oath."[54] Thus, it was very clear in *Philips* that egregious discovery abuses had taken place and terminating sanctions were justified.

### Sanctions Are Not Warranted Against XRoads as to the Ticket Database Issue

After thorough review of the materials submitted in relation to the 447 Motion, including the filings of the parties, the transcripts of the Phase I and Phase II hearings, and the expert reports of Mr. Gungor, sanctions are not warranted against XRoads as to the ticket database issue.

---

[50] *Id.* at 921 (citations and quotation marks omitted).

[51] *Philips Electronics North America Corp. v. BC Technical*, 773 F.Supp.2d 1149 (D. Utah 2011).

[52] *Id.* at 1158.

[53] *Id.*

[54] *Id.* at 1156.

As indicated during the Phase I and Phase II hearings, Mr. Gungor's reports and testimony do not support FatPipe's contention that evidence was destroyed that was prejudicial to FatPipe. While Mr. Gungor did find that some information was missing[55] that could have been "helpful" to FatPipe's understanding,[56] the overwhelming majority of information XRoads produced to FatPipe was reasonably useable and understandable.[57] Further, the fields that were missing from the tables and other information largely were not "necessary" or "essential" for FatPipe to have in order to conduct a review on the ticket database information.[58]

There were differences between the production given to FatPipe and the actual contents of XRoads' Omnistar database, but Mr. Gungor explained that these differences were minor, and were only due to the fact that "XRoads' Omnistar Live database is being actively used"[59] and therefore contained some newer records than what had been disclosed to FatPipe as of the date of disclosure.[60] This is harmless, and as Mr. Gungor noted, "*when the two sets of tables are*

---

[55] Phase II Report at 2 ("[W]hile XRoads' production to FatPipe is reasonably usable, it is incomplete as it is missing database tables that are used by the Omnistar Live software which contain information helpful to understanding the problems and solutions stated in the tickets and responses."); *Id.* at 3 ("I determined that the ticket_id numbers which FatPipe asserts to be missing are in fact missing tickets.")

[56] *Id.* at 2.

[57] *Id.* ("[T]he .frm, .myd and .myi files in FatPipe's possession are reasonably useable to replicate the information available to XRoads in its customer support ticket and response functions."); Phase I Report at 2 ("In my opinion, the .frm, .myd and .myi files in FatPipe's possession are reasonably understood as 'native format'."); Phase I Report at 3 ("In my opinion, XRoads' use of MySQL software to provide the customer support ticket and response data to FatPipe is a reasonable method for delivery of that data."); Phase II Report at 2 ("I determined that the attachments in the possession of FatPipe are in the same format as maintained by XRoads."); Phase II Report at 3 ("In my opinion, the ticket and response attachments are reasonably accessible to FatPipe."); Phase II Report at 3 ("XRoads database have the same file extensions (if any) as the corresponding attachments in XRoads' production to FatPipe.").

[58] Phase I Report at 2 ("[A] configuration file is not essential or helpful for FatPipe to use the .frm, .myd and .myi files."); Phase I Report at 2 ("In my opinion, Omnistar Live 6.0 is not necessary for access to the customer support ticket and response information in FatPipe's possession."); Phase I Report at 2 ("In my opinion, it is not reasonably necessary for FatPipe to know what hardware and operating system XRoads uses in the normal course of business to access the customer support and ticket information."); Phase II Report at 2 ("[D]atabase logs do not constitute part of the XRoads customer support ticket and response dataset, and they are not essential for FatPipe to access the data produced to it.").

[59] Phase II Report at 3.

[60] *Id.*

*compared within the same ID and date range*, the database tables maintained by XRoads do not contain attachments which are not present in XRoads' production to FatPipe."[61] In other words, Mr. Gungor concluded that XRoads' database contained substantially the same information as was disclosed to FatPipe.

Regarding the roughly 5,000 missing ticket IDs, Mr. Gungor stated that "both parties' explanations regarding the missing ticket IDs make sense."[62] FatPipe claimed XRoads intentionally deleted the tickets to hide relevant information from FatPipe,[63] while XRoads claimed the tickets were irrelevant duplicates or spam that were deleted as part of XRoads' normal course of business.[64] Because FatPipe lacks evidence that the missing ticket IDs were anything more than deletions of duplicate tickets and spam, FatPipe fails to carry its burden that the missing ticket IDs represent sanctionable spoliation.

The only remaining question is whether XRoads should be sanctioned for its use of "mysqldump" in providing ticket and response information to FatPipe. Mr. Gungor explained that, in his opinion, "XRoads' use of mysqldump was not a reasonable method for delivery of the ticket and response data to FatPipe."[65] However, it must be remembered that FatPipe also received the files in native format, and therefore had the ability to search the native files for information it felt was necessary to conduct its review of the production. Furthermore, Mr. Gungor explained during the Phase I hearing that there could have been bugs with the dump software that could have caused minor problems with the production of the information, and XRoads could have had problems during the operation of the dump software that could have

---

[61] *Id.* (emphasis added).

[62] *Id.*

[63] 555 Memo at 2, 9.

[64] 554 Supp. Brief at 12-13.

[65] Phase I Report at 3.

contributed to other complications. Thus, the use of "mysqldump" is not sanctionable conduct because FatPipe had the native files in its possession, as provided by XRoads.

The remaining arguments raised by FatPipe have been reviewed and are not convincing. XRoads' conduct does not rise to the level of prejudicial destruction of evidence that is required to be shown before awarding sanctions. FatPipe has failed to carry its burden. Sanctions are not warranted.

The dispute over the ticket database must be kept in perspective. While approximately 5,000 ticket numbers were missing, XRoads' explanation of these missing numbers was perfectly reasonable. The original database was missing the numbers just like the produced database. And most importantly, the ticket database was thought *by FatPipe* to be a potential source of information about infringement. It was never shown to be a valuable source of information. And the value of customer reports about technical issues of a product is secondary to the primary evidence in the form of the XRoads devices and firmware—none of which yielded evidence of infringement. The effort and expense and time devoted to this issue demonstrates how discovery sideshows can divert attention from the merits of a case.

### Attorney's Fees Will Not Be Awarded

Because XRoads has not included any explanation as to why attorney's fees should be granted other than it "should be granted its attorneys' fees and costs for responding" because it previously "placed Fatpipe on notice of its intent to seek fees and costs from Fatpipe if Fatpipe did not withdraw its motion,"[66] attorney's fees for this motion will not be awarded.

---

[66] Opposition at 1, 27; *see also* Defendant's Opposition to Plaintiff's Supplemental Memorandum in Support of Platiniff's Motion for Sanctions at 6, docket no. 608, filed January 31, 2014 (stating only that "the Court should deny the motion and award XRoads its attorneys' fees . . . .").

## ORDER

IT IS HEREBY ORDERED that FatPipe's Motion for Sanctions for Ticket Database Spoliation is DENIED.[67]

IT IS FURTHER ORDERED that XRoads' request for attorney's fees is DENIED.

IT IS FURTHER ORDERED that because this Memorandum Decision and Order refers to material filed under seal, the parties shall meet and confer and FatPipe shall file within fourteen (14) days a redacted version of (a) this Memorandum Decision and Order, and (b) each sealed document cited in this Memorandum Decision and Order, unless excused by court order.

Dated September 22, 2015.

BY THE COURT:

_David Nuffer_
David Nuffer
United States District Judge

---

[67] Plaintiff FatPipe Networks' Motion for Sanctions for Ticket Database Spoliation and Discovery Violations ("447 Motion"), docket no. 447, filed March 7, 2012.

```
                    United States District Court
                              for the
                         District of Utah
                        September 22, 2015
```

******MAILING CERTIFICATE OF THE CLERK******

RE: Fatpipe Networks India v. Xroads Networks
    2:09-cv-00186-DN


Manny J. Caixeiro
PERKINS COIE LLP
30 ROCKEFELLER PLAZA 22ND FL
NEW YORK, NY  10112-0015

Timothy J. Carroll
PERKINS COIE LLP
131 S DEARBORN ST STE 1700
CHICAGO, IL  60603

Brent O. Hatch
HATCH JAMES & DODGE
10 W BROADWAY STE 400
SALT LAKE CITY, UT  84101

John C. O'Malley
NEWPORT TRIAL GROUP
4100 NEWPORT PL STE 800
NEWPORT BEACH, CA  92660

Jeffrey R. Olsen
1175 WOODMOOR DR
BOUNTIFUL, UT  84010

Blake T. Ostler
THOMPSON OSTLER & OLSEN
57 W 200 S STE 350
SALT LAKE CITY, UT  84101-3663

_____
Becky L. Harris, Deputy Clerk